THE FIRE ASSOCIATION OF PHILADELPHIA V.
S. E. TAYLOR.

No. 15,186. (91 Pac. 1070.)

SYLLABUS BY THE COURT.

1. WRITTEN CONTRACTS—*Rules of Construction—Fire-insurance Policy.* A policy of insurance, being an instrument prepared by the insurer, should, in case of doubt as to its provisions, be strictly construed against the insurer and liberally in favor of the insured. The object of the contract being for indemnity against loss, it will be so construed, in case of doubt, as to support rather than defeat the indemnity. As, however, in contracts jointly prepared by the parties thereto, if the terms of a policy are clear and unambiguous they will be taken in their plain and ordinary sense and no construction is necessary.

2. —————— *Ambiguity—Conduct of the Parties.* If the parties to an ambiguous contract have subsequently acted upon it in such a manner as to indicate their mutual intent therein or understanding thereof, a court, in construing such contract, should, as a rule, adopt the construction indicated by such action.

3. FIRE-INSURANCE—*Settlement by Adjuster—Presumption of Authority—Notice.* When property upon which there is insurance is destroyed by fire, and the insured informs the insurer thereof, and soon thereafter a person appears at the scene of the fire and adjusts and pays the loss and takes from the insured a receipt for the payment, in the name of the insurer, it will be presumed that such person is the agent of the insurer and that the insurer had notice and knowledge of such facts as came to the notice and knowledge of such agent affecting the business so done by the agent.

Error from Morris district court; OSCAR L. MOORE, judge. Opinion filed October 5, 1907. Affirmed.

STATEMENT.

THE policy sued on in this case was, in consideration of $6, issued for a term of three years, first insuring $600 upon plaintiff's dwelling-house, "situate on lot 14, in block 1, village of Helmick, Kan." The insurance began April 1, 1903. For a further consideration of $7 other insurance ($700) was provided for the same term.

When the additional $700 was added, instead of preparing a new policy a form, or printed slip, was attached to the policy of April 1, 1903, embodying the additional items insured, together with the dwelling. This form thereafter, with the printed policy, constituted the insurance contract held by plaintiff. So far as is material to the questions now involved, the policy reads as follows:

"The Fire Association of Philadelphia, in consideration of the stipulations herein named, and of $6 [and $7] premium, does insure S. E. Taylor for the term of three years from the first day of April, 1903, to the first day of April, 1906, at noon, against all direct loss or damage by fire, except as hereinafter provided, to an amount not exceeding $600 [and $700], to the following described property, while located and contained as described herein, and not elsewhere, to wit:
$600 on his . . . dwelling-house, . . . situate on lot 14, in block 1, village of Helmick, Kan.
$100 on household furniture, . . . while contained therein.

$ Nothing on ...............................
$75 on frame, board-roof barn, situate on lots 12 and 13, block 1.
$450 on horses, . . .
$75 on vehicles, robes, horse and carriage equipments and garden tools and harnesses.
$ Nothing on hay, grain, and feed; all only while contained in above-described barn. . . .

"To be attached to policy No. 2676786 of the Fire Association of Philadelphia. . . .

"If property covered by this policy is so endangered by fire as to require removal to a place of safety, and is so removed, that part of this policy in excess of its proportion of any loss and of the value of property remaining in the original location shall, for the ensuing five days only, cover the property so removed in the new location; if removed to more than one location, such excess of this policy shall cover therein for such five days in the proportion that the value in any one such new location bears to the value in all such new locations."

On August 5, 1904, a fire damaged part of the property insured. Settlement was made, and plaintiff appears to have given a receipt and attached to it the policy, which receipt reads as follows:

"$84.50           HELMICK, KAN., August 24, 1904.
Received of Fire Association of Philadelphia, Pennsylvania, through agent at ———— the sum of eighty-four $^{50}/_{100}$ dollars, it being in full payment and compromise settlement of all claims and demands for loss and damage by fire which occurred on the 5th day of August, 1904 (as set forth in accompanying proof of loss), under policy No. 2676786, issued at the Council Grove, Kan., agency of said company, and in consideration of said payment the sum insured is reduced in that amount, leaving the sum of third item canceled. Fifth item reduced $9.50, only, now in force under said policy covering proportionately, and in the same manner on the various items named therein, as the amount of loss thereon bears respectively thereto.

S. E. TAYLOR, *Assured.*"

The fire of August 5 destroyed the barn described in the policy and insured under its third item.

The horses described in item No. 4 were not burned,

and after the barn had been destroyed plaintiff moved them to another barn on land he owned, not on either of the lots described in the policy but across a public street, or road, and the right of way of the Missouri Pacific Railway Company.

On January 15, 1905, this other barn, so located on other land, and situated on the opposite side of a street and railroad right of way from the first, was burned, and with it several horses. Plaintiff made claim for the loss of these, as property insured under the policy described, instituted suit therefor, and obtained judgment for $450, with interest and costs. The defendant complains.

*Fyke & Snider,* for plaintiff in error.

*Nicholson & Pirtle,* for defendant in error.

The opinion of the court was delivered by

SMITH, J.: It is agreed in the briefs of the parties that the only question for our determination is whether the horses burned were covered by the policy of insurance in the location where they were burned or whether the contract limited the liability of the association for loss by fire on this property while the horses were contained in the barn described in the policy and were not elsewhere. The only evidence set forth in the record is the following stipulation:

"It is stipulated and agreed in this case that the following are the facts in the case:

"It is agreed by the parties hereto that the horses that were burned were of the value of four hundred fifty dollars ($450) ; that at the time the horses were burned they were in a barn on the opposite side of the street, or road, and not on either one of the lots described in the policy, but on the premises belonging to the plaintiff; that the right of way of the Missouri Pacific railroad is between the lots described in the policy and the place where the barn was located when the horses were burned; but that the property where the horses were burned was the property of the plaintiff.

"It is further agreed that when the barn upon the premises described in the policy was burned, the plaintiff will testify, the adjuster appeared upon the ground and adjusted the loss of the barn and other property contained in the barn, and that at the time he so adjusted the loss of this property he inquired where the horses were that were included in the policy, and was told that they were across the road and right of way of the railroad company, in the barn on the other side, and that he took a receipt from the plaintiff for the money paid for the loss on the barn destroyed, and the property therein contained, and did not offer or tender to the plaintiff the premium or any portion of it."

The stipulation should be, and, of course, was, regarded as if the plaintiff had been placed upon the witness-stand and had testified to the facts therein recited, and, there being no contradictory evidence, the recitals were accepted as true.

There is also an implication from the language used that the stipulation embraced all the controverted facts. If so the plaintiff's ownership of the horses burned should be accepted, as alleged. The reply brief of the association seems to acquiesce in the statement in the answer brief that nothing is in issue but the construction of the contract, and we will so regard it, as the trial court evidently did. Otherwise this material allegation as to ownership, being entirely unsupported by evidence, the judgment would have to be reversed. Surely neither the learned court nor the counsel could have considered this allegation in issue. The very object of the stipulation seems mutually to have been to strip the case of all other controversies except this: Were the horses which were burned covered by the insurance policy in question at the time and place they were destroyed?

In the absence of fraud and duress parties competent to contract may make any contract for a lawful purpose which they may agree upon, and if the terms used are unambiguous there is nothing for the courts to do in the enforcement thereof but to give effect to the

plain recital. Neither party will be heard, in such a case, to say that his understanding of the contract or his meaning thereby was other than the language used indicates. Where, however, the language used is susceptible of two or more meanings, it devolves upon the court to ascertain, by considering the situation of the parties, the purpose to be accomplished by the contract, and all the surrounding circumstances, what the actual intent of the parties was, and to give effect to it. If the parties acted upon a contract ambiguous in any way, and such action indicates their mutual understanding as to its ambiguous provisions, the courts will usually adopt such interpretation as most likely to accord with the original intent.

The contention of the association is that the horses were insured only while they remained in the barn located as described in the insurance policy. On the other hand, plaintiff contends that the horses were insured wherever they might be, or, at least, were insured while in the barn where they were when destroyed.

It cannot be said that the policy is unambiguous. In the statement of facts the printed slip for the items insured which was attached to the original policy is reproduced as near as may be. The first item insured is the dwelling-house. The second item is furniture, etc., "while contained therein." The third item in full is "$ Nothing on ————." The fourth item is the barn, describing the material of the same and the location thereof. The fifth item is $450 on horses, without specifying where they are kept or to be kept. The sixth item is $75 on vehicles, etc., without location. The seventh item is, in full, "$ Nothing on hay, grain and feed; all only while contained in above-described barn." Each item constitutes a full sentence, and is punctuated as indicated.

The question is whether the last clause of the seventh item clearly modifies the two preceding items. That the association so intended is probably true. Is it so

clear that he who runs may read or that the insured, reading the item "$450 on horses," must be held to drop down two items below to an item which insures nothing, and on its face has no reference to horses, to find a qualification upon the insurance on his horses? The form for the seventh item was prepared for a risk to be assumed on hay, grain and feed, and the qualifying clause may limit the place where these products are to be kept, or, as contended, it may include the two preceding items. It is, then, ambiguous.

The general rule seems to be that a policy of insurance, being an instrument prepared by the insurer, should in case of doubt be construed strictly against the insurer, who prepares it, and liberally in favor of the insured, even though the intent of the company may be otherwise. The object of the contract being to afford indemnity, it will be so construed, in case of doubt, as to support, rather than defeat, the indemnity provided for. If there is any doubt or uncertainty under the terms of the policy as to the intent of the parties, it is to be resolved in favor of the insured, or, if a policy is susceptible of two constructions, that construction is to be adopted which is favorable to the insured. (See 19 Cyc. 656, and authorities there cited; also, *Chandler v. St. Paul Fire & Marine Insurance Co.*, 21 Minn. 85, 18 Am. Rep. 385.)

Much has also been said in regard to the nature of the property insured—whether animate or inanimate—and as to the contemplated use thereof in determining whether the parties to the insurance contract intended that the property should only be insured while it remained in the place referred to in the policy; but the qualifying clause in this policy, if it applies to the insurance upon the horses at all, restricts the insurance upon them to the time "only while contained in above-described barn."

Rather than upon any general rule of construction, we prefer to arrive at the intent of the parties by their

own interpretation of the policy, as shown by their actions. The policy was issued in April, 1903. In August, 1904, a fire occurred which entirely destroyed the barn, and only while the horses were within it were they insured, according to the claim of the association. Nineteen days after this fire, and fourteen days after the five days' extension of insurance in case of necessary removal occasioned by fire, the association paid the indemnity for the loss of the barn and for a partial loss on the fifth item, and took a receipt from the insured which expressly recognized the fifth item, as reduced by the payment, as still in force, and by necessary implication recognized all the other items, including the one on the horses, as in full force. The barn where the horses were afterward burned was then pointed out as the place where they were being kept, and the association did not then offer to return any unearned premium nor did Taylor demand the same. They each treated the policy as in force on the dwelling and the contents therein insured, and on the horses and the vehicles, etc., as reduced by the payment of the partial loss. It cannot be assumed that at the time of this adjustment Taylor intended to donate the unearned premium for nearly twenty months on $450 insurance; nor that the association intended to keep the unearned premium without any consideration therefor. It is more in accord with business dealings to presume that both parties intended to maintain the insurance on the horses as well as on the vehicles, which was specified in the receipt, although the barn was not in existence and hence could contain none of these items. This was evidently the conclusion of the court below.

But it is said no authority is shown in the person, called the adjuster, to represent the association. After a loss by fire has occurred to insured property, and the insurer has been notified thereof, and soon thereafter a man appears upon the scene of the fire and adjusts the loss and pays the indemnity and takes a receipt

therefor in the name of the insurer, it will be presumed that he acts as the agent of the insurer in transacting such business; and it will further be presumed that the principal is informed and knows of all such facts as the agent is informed of and knows affecting such business.

This is not regarded as a waiver of any condition of the policy or as the making of any new contract, but as a mutual interpretation by the parties thereto of the meaning of the original, ambiguous and uncertain contract, which meaning the court below properly adopted.

The judgment is affirmed.