No. 38,868

LLOYD SAUL, *Appellant,* v. SAINT PAUL-MERCURY INDEMNITY COMPANY and ST. PAUL FIRE AND MARINE INSURANCE COMPANY, *Appellees.*

(250 P. 2d 819)

Opinion filed December 6, 1952.

*John Berglund, Jr.,* of Clay Center, argued the cause, and was on the briefs for the appellant.

*H. G. Engleman,* of Salina, argued the cause, and *LaRue Royce, E. S. Hampton, H. H. Dunham, Jr., John Q. Royce,* and *C. Stanley Nelson,* all of Salina, were with him on the briefs for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This was an action on an insurance policy to recover the value of a truck destroyed in the 1951 flood. The plaintiff appeals from an order sustaining defendants' general demurrer to his amended petition. We shall continue to refer to the parties as plaintiff and defendants.

The plaintiff was Lloyd Saul and defendants were Saint Paul Mercury Indemnity Company and Saint Paul Fire and Marine

Insurance Company. The amended petition stated defendants were engaged in carrying on the business of fire and water insurance. The policy was attached to the amended petition and was made the basis of the recovery sought. The amended petition further, in substance, alleged:

Defendants entered into a contract by which they agreed to and did insure plaintiff against loss and damage to the truck by water; the truck was totally destroyed by *flood water* from the Kaw and Blue rivers and other sundry streams without plaintiff's fault; the loss occurred when the water from such rivers suddenly broke over their respective banks and levees and encircled the truck which plaintiff had removed from his place of business, placed on higher ground and chained to a sturdy pole; the truck was washed away by a terrific force of water and into a thirty-three-foot hole; plaintiff made proof of loss and demand for payment which defendants refused.

The amended petition, also, in substance, alleged:

A Mr. Gross, authorized agent of defendants, first advised plaintiff defendants would pay to the extent of actual loss sustained but later informed him the loss was caused by an act of God and refused to make payment.

The amended petition was attacked by motion to strike the last allegation and some others. The motion and demurrer were presented at the same time. The court sustained the demurrer and concluded that after such ruling the motion was moot.

The policy contained the following provision on its face and near the top of the first page:

"Item 3.—The Insurance Afforded *is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges.* The limit of the Company's liability against each such coverage shall be as stated herein, *subject to all the terms of this Policy having reference thereto.*" (Our italics.)

Immediately under the foregoing statement were listed ten available types of coverage. They were listed separately following capital letter headings from "A" to "J." The space provided for indicating the cost of the coverages was left blank as to coverages plaintiff did not purchase. The policy stated the cost of each item of coverage which plaintiff selected and for which he paid.

Coverage "D," being "Comprehensive" insurance, and coverage "I," being "Combined Additional Coverage," were not selected or paid for by plaintiff although either of them would have provided

protection against floods. "D" would have done so under its general provisions. Coverage "I" expressly embraced damage by "flood or rising waters" as well as "external discharge or leakage of water except loss resulting from rain, snow or sleet." Among the category of ten coverages available was "H" which plaintiff purchased and for which he paid a premium of $1.60 on the truck valued at $1,600. The abbreviated description of "H," as listed among the ten coverages of available insurance, reads:

"Windstorm, Earthquake, Explosion, Hail or Water."

As heretofore stated that item as well as all other items of insurance purchased or available were expressly made, ". . . subject to all the terms of this Policy having reference thereto." The terms under which coverage "H" was purchased read:

"To PAY for direct and accidental loss or damage to the automobile, hereinafter called loss, caused by windstorm, hail, earthquake, explosion, *external discharge or leakage of water* except loss resulting from rain, snow or sleet." (Our italics.)

The substance of plaintiff's primary contention is that although he did not purchase and pay the premium rate for insurance coverage which would have protected him against damage resulting from "flood or rising waters" the word, "Water," found in the general description of coverage "H" and the words, "external discharge or leakage of water" contained in the terms under "H," above set forth, should be construed to include damage by "flood or rising waters." In other words although plaintiff agrees a contract must be construed from its four corners his primary contention is that the four corners of the contract comprise only the terms of the particular coverages he actually purchased; that in determining the intent of the parties courts should ignore the facts that flood insurance was expressly made available under coverage "I" and that he did not purchase it.

We cannot agree to such a narrow rule of construction for determining the intent of the parties. This is particularly true where, as here, it plainly appears in the policy various types of insurance are available and that the insured declined to purchase the kind of insurance which would have afforded the protection he now claims. In order to sustain plaintiff's contention we would be obliged to say the fact flood coverage is clearly made available to an insured under a policy, and the further fact that he sees fit not to buy it, cannot be considered in determining the nature of the insurance he intended to buy and actually purchased.

Such a rule cannot be invoked with safety to either party. The accepted rule is that the intent of the parties must be determined by a consideration of the contract as a whole and not by lifting some one sentence or provision from the policy and attaching a particular meaning to such portion standing alone. (Appleman's Insurance Law and Practice, § 7383.) The rule, of course, applies with equal force to all parties to the contract. If the rule contended for by plaintiff were adopted it could lead to wholly unconscionable results against some other insured in a case where mere consideration of an isolated provision would prevent his recovery but where a consideration of the entire contract would permit his recovery.

Furthermore, in the instant case plaintiff did not plead the isolated coverage provided in "H" as a basis of recovery. He alleged that "by virtue of the terms of the said contract" defendants were indebted to him. The entire policy was attached to his amended petition as constituting the contract of insurance. We need not further labor plaintiff's primary point. In *Knouse v. Equitable Life Ins. Co.*, 163 Kan. 213, 181 P. 2d 310, we held:

"The court must look to the entire contract of insurance for a true understanding of what risks are assumed by the company and what risks are excluded. . . ." (Syl. ¶ 5.)

On the exact point as applied to a highly similar insurance case involving separate coverage for damages resulting from "external discharge or leakage of water" and damages resulting from "flood or rising water," see *Glens Falls Ins. Co. v. McCown,* (Tex. Civ. App.) 236 S. W. 2d 108, (1951).

We come now to the question whether the words "external discharge or leakage of water" contained in coverage "H," which plaintiff purchased, properly may be held to mean damage resulting from "flood or rising waters" and thus permit his recovery notwithstanding he did not purchase flood insurance. We shall approach the matter realistically. We seriously doubt that during the long and trying days of the unprecedented 1951 flood, or during any other flood, anyone referred to such floods as an "external discharge or leakage of water." If a flood has been so designated in common parlance and everyday usage it has escaped our attention. Plaintiff's amended petition referred to the cause of damage in the same manner the ordinary person would have referred to it, namely, as a flood. No one can doubt that is what it was. In the recent case of *Youse v. Employers Fire Ins. Co.*, 172 Kan. 111, 238 P. 2d 472, we followed the well established rule in this state and elsewhere which is:

"Words employed in contracts of insurance are to be construed according to the meaning of the terms used, and are to be taken and understood in their plain, ordinary and usual sense, so as to give effect to the intention of the parties. Where such words have acquired a peculiar and appropriate meaning in law they are to be construed according to such meaning." (Syl. ¶ 1.)

See, also G. S. 1949, 77-201, *Second.*

The terms of coverage "I," being the "Combined Additional Coverage" provision, read:

"To PAY for direct and accidental loss of or damage to the automobile, hereinafter called loss, caused by windstorm, hail, earthquake, explosion, riot or civil commotion, or the forced landing or falling of any aircraft or of its parts or equipment, *flood or rising waters, external discharge or leakage of water* except loss resulting from rain, snow or sleet." (Our italics.)

From the foregoing provision it clearly appears "external discharge or leakage of water" was recognized by the policy as a separate and distinct coverage from that pertaining to "flood or rising waters." It previously was observed that coverage "H" did not insure against damage resulting from "flood or rising waters." "D," being a "Comprehensive" provision, covered damage due to "flood or rising waters" and "I" did so expressly. However, as previously stated, plaintiff did not see fit to purchase either of the last two coverages. We are not presently called upon to define the precise meaning or to prescribe the exact limitations of the phrase, "external discharge or leakage of water." There will be time to do that when the precise question arises. For present purposes it will suffice to say a consideration of the entire policy makes it entirely clear the phrase was not intended to be synonymous with "flood or rising waters" and that plaintiff did not buy insurance covering loss resulting from the latter causes. This is precisely what was held in the recent case of *Glens Falls Ins. Co. v. McCown,* supra, in which cases from various jurisdictions were considered.

Plaintiff argues the terms of the policy are ambiguous and ambiguity must be resolved against an insurer. We have just indicated it is clear the policy did not confuse the subject of damages from "external discharge or leakage of water" with damages from "flood or rising waters" but that on the contrary it listed them as separate and distinct coverages. Plaintiff did not buy and defendants did not assume the latter risks. The rule requiring ambiguous provisions to be construed in favor of the insured has no room to operate on the particular point here involved. In *Barish-Sanders Motor Co. v. Fireman's Fund Ins. Co.,* 134 Neb. 188, 278 N. W. 374, it was aptly said:

"The rule to construe ambiguous or inconsistent terms of an insurance contract in favor of insured, because insurer selected the language used, does not justify the imposing of insurance risks not assumed." (Syl. ¶ 1.)

Where an insurance contract is not ambiguous courts will not make another contract for the parties but will enforce the contract as made. (*Braly v. Commercial Casualty Ins. Co.*, 170 Kan. 531, 227 P. 2d 571.) Courts should not be astute to evade but rather they should be quick to perceive and diligent to apply the meaning of words manifestly intended by the parties. (*Gorman v. Fidelity & Casualty Co. of New York*, 55 F. 2d 4; *Knouse v. Equitable Life Ins. Co.*, supra, p. 216.)

Plaintiff does not strongly urge but does say some portions of the policy are printed in larger type than others and directs attention to a decision of this court involving an accident policy. Plaintiff does not allege the terms of the instant policy were misrepresented to him in any particular and does not contend he was misled in any manner by the policy provisions. We need not pursue the subject. The pertinent statute on the matter last referred to by plaintiff is G. S. 1949, 40-1109. It does not apply to this type of policy.

Plaintiff appears to raise a new issue in his reply brief. It was filed with the clerk of this court about ten days before the date the case was set for oral argument. The brief was not served on counsel for defendants until they appeared here for such argument and they have asked us to disregard it. They further state the point discussed therein was not presented to or decided by the trial court and direct attention to the fact it was not presented in plaintiff's original brief in this court. Such a practice does not conform to the rules of this court and we probably would be justified in disregarding the brief. However, having given counsel for defendants a few days to respond, which they have done, and in view of the conclusion we feel obliged to reach on the point presented, we have concluded to consider it. We probably, however, should say we are considering the point primarily for the reason the instant action was based on the entire policy, which was made a part of the amended petition, and the point presented is involved in the construction of the policy.

Plaintiff's point is that coverage "E," which he purchased, embraces "Collision or Upset." The terms of coverage "E" include damage caused by a collision of the vehicle with another object. Plaintiff argues flood waters constitute *another object* and that the damage to the truck was caused by a collision of the flood water

with his truck. We think the contention cannot be sustained. An instructive annotation on the subject, "Damage to vehicle resulting from wind or other phenomenon of nature as within coverage of automobile insurance policy insuring against collision or upset," will be found following the case of *Mercury Insurance Co. v. McClellan*, 14 A. L. R. 2d 806, 812. On this subject see also the later case of *Glens Falls Ins. Co. v. McCown*, supra. Assuming, but only for the purpose of argument, that contact of a flood or rising waters with a stationary truck properly could be regarded as a collision with another object, did defendants insure against damage resulting from such a collision? It appears that theory of recovery was expressly excluded from the policy.

The terms of "D," the comprehensive clause, clearly exclude such recovery. It states:

". . . loss caused by . . . *water, flood* . . . shall not be deemed loss caused by *collison* or upset." (Our italics.)

It follows if plaintiff had purchased available insurance against loss resulting from floods or rising waters he would have been fully protected but not on the theory of a collision.

The judgment is affirmed.