No. 40,167

HAZEL BENNETT, *Appellant*, v. PAUL P. CONRADY and the UNITED NATIONAL INDEMNITY COMPANY, *Appellees*.

MURIEL CHILDS, *Appellant*, v. PAUL P. CONRADY and the UNITED NATIONAL INDEMNITY COMPANY, *Appellees*.

EDITH REIDA, *Appellant*, v. PAUL P. CONRADY, and the UNITED NATIONAL INDEMNITY COMPANY, *Appellees*.

(305 P. 2d 823)

486

Opinion filed January 12, 1957.

*Paul R. Wunsch,* of Kingman, argued the cause, and *Dalton T. Holland,* of Harper, and *Charles H. Stewart,* of Kingman, were with him on the briefs for the appellants.

*J. B. Patterson,* of Wichita, argued the cause, and *A. W. Hershberger, Richard Jones, Wm. P. Thompson, H. E. Jones, Jerome E. Jones,* and *William E. Palmer,* all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

ROBB, J.: This is an appeal by three plaintiffs in a consolidated case from an order of the trial court directing an insurance carrier of the common defendant to pay a certain sum together with interest thereon into court to be distributed pro rata in satisfaction of judgments obtained by the plaintiffs. The parties will continue to be denominated as stated above.

Our attention is first directed by the insurance carrier to its contention that plaintiffs are not entitled to the relief they are seeking. While this was not pursued to any great length we do not want to ignore it and will give it brief attention. The insurance carrier voluntarily entered its appearance, as will be set out more fully in subsequent portions hereof, and the trial court made a final order which in substance disposed of any further claims of plaintiffs

just the same as though there had been an execution and garnishment issued on the judgment against the defendant.

Originally there were five claims for damages for personal injuries arising out of a collision on October 20, 1953, between the station wagon in which the claimants were passengers and a truck driven by the defendant. Before any actions were filed, the insurance carrier in a letter dated September 23, 1954, notified all parties of its undisputed $10,000 maximum liability under defendant's policy and although it did not admit any liability on the part of defendant, it offered to pay $10,000 in settlement of all claims for personal injuries arising from the collision. The letter then further stated,

"In order to do this, of course, it will be necessary that all of the various claimants agree concerning the division of the $10,000 among them."

The insurance carrier at the same time also notified defendant of this offer to the claimants.

As soon thereafter as possible the five claimants filed separate actions against Paul P. Conrady in the following sequence: Eldred E. Fisher, Hazel Bennett, Muriel Childs, Edith Reida, and Kenneth Ray Graves. The Fisher and Graves' cases were consolidated in a pretrial proceeding but the other three plaintiffs refused to consolidate at that time. The attorneys for Fisher and Graves submitted offers to settle their cases for $4,000 each. The insurance carrier relayed this offer to the defendant and his attorney, direction to settle on that basis was immediately given, the insurance carrier paid $4,000 in each case, full releases were obtained and journal entries of dismissal with prejudice were filed therein.

Later the three cases here under consideration were consolidated and final judgment was obtained in the Bennett case for $6,953.24, in the Childs' case for $8,529.40, and in the Reida case for $4,142.64. No appeals were taken from those judgments.

Subsequently the insurance carrier entered an appearance and requested direction by the trial court as to the manner in which payment of the $2,000 balance of its policy limits should be made on the judgments for the reason that the same exceeded such policy limits.

Plaintiffs filed an answer thereto wherein they denied that the balance in the insurance carrier's hands was $2,000 and stated that the three plaintiffs were entitled to a division of the policy limits of $10,000; that any payments made were made without legal or contractual authority, they were not binding on these plaintiffs, and

the insurance carrier was not entitled to any credit therefor because (1) such settlements constituted equitable preference and were contrary to public policy (2) there was no authorization under the policy to so settle and if there existed such authority the terms were not complied with (3) such settlements were not made in good faith (4) there was no legal authority to settle less than all of the multiple claims or to take into account against plaintiffs' judgments compromised claims not reduced to judgment because judgments of plaintiffs have priority over other claims not reduced to judgment and (5) such settlements were made to defeat these plaintiffs, they were excessive and were out of proportion in view of the policy limits.

The answer further alleged that in view of the original offer by the insurance carrier before any actions were filed, plaintiffs should have been advised of such settlements as otherwise the insurance carrier would have no right to have credit against its original policy limits; if plaintiffs' judgments did not have priority then there should be an apportionment of the $10,000 among all those involved in the collision as their respective claims or judgments were in ratio to the total amount of claims and judgments against the defendant; and finally, the interest to be ordered paid should be at the rate of six percent on $10,000 rather than on $2,000.

A hearing was held wherein oral testimony and exhibits were presented but only those elements needed will be narrated here. The $2,000 together with an additional amount to satisfy interest thereon and the court costs in the cases now being considered were paid by the insurance carrier in compliance with the trial court's order so to do. Plaintiffs appealed and raise a number of specifications of error but the concrete question involved is whether the trial court erred in giving credit to the insurance carrier for the $8,000 paid out in settlement of the claims of Fisher and Graves or, stated in another way, they contend it was error to conclude that only $2,000 should be distributed toward satisfaction of plaintiffs' judgments.

The policy was a standard type providing for bodily injury liability limits of $5,000 for each person and $10,000 for each accident with the further standard provision that the company shall:

". . . (a) defend any suit against the insured alleging such injury . . . and seeking damages on account thereof . . . but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient. . ."

While it is not conceded, there is nothing in the record which controverts the statement by the insurance carrier that the claims in the two cases which were settled exceeded the settlement figure of $4,000 for each one. There can be no dispute that under the terms of the policy when those terms are construed in their plain, ordinary and usual sense, the insurance carrier could make settlement of the claims as it deemed expedient. (*Saul v. Saint Paul-Mercury Indemnity Co.*, 173 Kan. 679, Syl. ¶ 6, 250 P. 2d 819.)

As to the duty of the insurance carrier to settle in such an instance as that which confronts us here, no Kansas authority has been cited on the specific point and our research has revealed none. However, the question of the duty of an insurer to defend actions against its insured has been determined in keeping with the general if not the universal weight of authority which makes the insurer liable if it negligently conducts or refuses to conduct such defense for the insured to the full amount of the insured's resulting loss even if that amount exceeds the limits of the policy. (*Anderson v. Surety Co.*, 107 Kan. 375, 191 Pac. 583, 21 A. L. R. 761, anno. 766, cited in 131 A. L. R. 1511.) In the Anderson case this court said:

"The opinion of the United States circuit court of appeals is also reported in 17 N. C. C. A., 1068, where a note is found on the 'liability of indemnity insurance company for negligence or bad faith in defending or settling action against insured.' (See, also, G. & M. L. M. Co. v. E. L. A. Cor., 117 Iowa, 180.)" (p. 378.)

In the above-mentioned volume 17 of Negligence and Compensation Cases Annotated at page 1068 we find the action referred to was by an insured to recover against the insurer an excess of the limits of the policy, and it was there said:

"The claim is that, having actively intervened in the defense of the suit and in the settlement thereof, it [the insurer] was under a duty imposed by law to exercise due care not to injure the plaintiff's rights in what it did; and we so hold." (p. 1091.)

Thus we see that once the insurer steps into the negotiations between its insured and an injured claimant, due care must be exercised by the insurer to protect the rights of the insured. The insurer here had taken part in the negotiations at all times from almost immediately after the accident and continuing through to the present appeal. At every step the insurer was exercising due care to protect the rights of its insured and we cannot say, as plaintiffs advocate, that it should now be penalized for so doing. In this connection see, also, 5 Couch on Insurance, § 1175f where the

change in attitude of courts is shown and discussed. In volume 2, 1945 Cumulative Supplement to Couch on Insurance, § 1175f, we find a statement which sets up a good yardstick for determining the degree of due care necessary in such a situation. The statement reads:

"An insurance company in the settlement of claims should be held to that degree of care and diligence which a man of ordinary care and prudence should exercise in the management of his own business." (p. 1355.)

Automobile insurance policies, like other liability or indemnity policies, reserve to the insurer final approval or rejection of a compromise for the policy limit, or less, of a claim or action for an amount in excess of such limit. The earlier rule placed no duty on the insurer to consider the rights of the insured in such a decision but the more commonly accepted rule in all jurisdictions now is that the insurer is bound to give some consideration to the insured's interest. Whether such consideration has been given is measured by the "good faith test" or the "negligence test" and has resulted in a wide variation in the decisions determining the liability of the insurer to the insured. Some authorities say that in the absence of actual fraud or misrepresentation the insurer is entitled to regard its own interest as paramount, a middle group holds that equal consideration must be given, while the view at the other extreme is that where there is a conflict of interest, that of the insured must be given priority. The more recent decisions have given weight to the negligence theory in determining whether good faith was the motivating element in the approval or rejection of a compromise offer so as to coalesce the two tests. (5A Am. Jur., Automobile Insurance, § 113, *et seq.*; 45 C. J. S., Insurance, § 936b.) Because of the aforementioned conflict of interest where an insurer defends the action or settles the claims against its insured, there is a mutual fiduciary relationship between the parties equal to that of a principal and agent relationship whereby each owes the other the duty to exercise reasonable care in conducting the defense or settlement. (29 Am. Jur., Insurance, §§ 1077, 1079.) An interesting and pertinent annotation in connection with what has been herein stated is to be found in *Best Building Co. v. Employers' L. Assur. Corp.*, 247 N. Y. 451, 160 N. E. 911, 71 A. L. R. 1464, anno. 1467, 1485e.

Applying the above principles to our present case, it appears that the insurance carrier placed itself in the position of agent of its insured to settle the claims or to defend if settlement could not be

reasonably worked out so that its failure or refusal to complete either duty would have been at least an indication, if not a complete showing of "bad faith" and would have made it liable to the insured for any loss sustained by him resulting from judgments against him in excess of the policy limits. Acting as it did, however, the insurer was exercising absolute good faith in making the settlements and the insured cannot now be heard to complain.

This brings us to another phase of the instant case and that relates to the position occupied by the injured persons and their multiple claims which far exceed the limits of the policy. Their rights would be best protected, of course, if no settlements were allowed. This subject was discussed in a recent article in 70 Harvard Law Review 27, *et seq.*, from which will be noted the statement that in all probability any effort to term settlements preferential so as to defeat them or cause their delay would create more problems and might result in the insurer and the courts giving more credence to the interest of the injured than they give to the insured. This would indeed be a step toward doing violence to and would be contrary to public policy because settlements are universally recognized and encouraged by courts as being in furtherance of public policy. Another article giving a good discussion of settlements, their relationship to public policy, and the authorities thereon is to be found in 19 Insurance Counsel Journal 419.

Any effort to restrain or abolish reasonably executed compromises or settlements of this type would make the rights of the injured parties paramount under a situation such as we have before us and would be contrary to the well-established rule that the injured parties have only those rights possessed by the insured had he paid the claims or judgments and the insurer is entitled to assert any defense against the injured persons which it could assert against the insured. (46 C. J. S., Insurance, § 1191 [3], p. 112.) The insurer certainly could not be enjoined by plaintiffs from settling with other persons injured in the same accident and thereby exhausting the fund to the exclusion of plaintiffs. (46 C. J. S., Insurance, § 1191 [9].) If we were to follow plaintiffs' theory it could lead us to a result where one injured person could enjoin the compromise and settlement by an insurer of the claim of another injured person in the same accident. This would be in direct conflict with what has just been stated. The better rule is that where, as here, an insurer settles two of five claims arising out of an automobile accident,

such settlement is not contrary to public policy as against the remaining three claimants who reduced their claims to judgment. (8 Appleman on Insurance Law and Practice § 4711.)

We have not treated each contention of plaintiffs separately but in general they have all been answered herein. We conclude that the insurer did what it was bound to do under the policy and that the trial court was correct in its order both as to the amount of $2,000 to be paid in for pro rata division among the plaintiffs on their judgments and as to the amount of interest due thereon since the $2,000 was all that remained in the hands of the insurer under its policy limits after the compromise and settlement of the first two claims.

As a result we find no error in the trial court's order overruling plaintiffs' motion for new trial.

The judgment is affirmed.

HALL, J., not participating.