No. 45,857

BENNIE STEWART and NOVELLA STEWART, *Appellants*, v. PREFERRED FIRE INSURANCE COMPANY, a Corporation, *Appellee*, AMERICAN ROCK CRUSHER COMPANY, a Corporation, Third Party Defendant.

(477 P. 2d 966)

·Opinion filed December 12, 1970.

*Samuel J. Wilson*, of Carson, Mahoney & Fields, of Kansas City, argued the ·cause and was on the brief for appellants.

*John J. Jurcyk, Jr.*, of McAnany, Van Cleave & Phillips, of Kansas City, argued ·the cause and was on the brief for appellee.

The opinion of the court was delivered by

FROMME, J.: This is a claim on an insurance policy covering a dwelling house. The trial court sustained the insurance company's motion and entered judgment against the homeowners.

Only one question is presented by the appeal. Was the loss .arising from the collapse of the house excluded from coverage by ·a clause in the policy excluding loss caused by earth movement including but not limited to earth sinking? The house sank into a pre-existing mine shaft underlying the property.

A stipulation of facts was entered into by the appellant home-·owners and the insurance company. For the purpose of this appeal the pertinent facts stipulated are as follows:

"(1) Homeowners Policy No. H 10 89 16, the form of which is attached hereto and marked Exhibit 'A', was issued by the 'Company' to the 'Plaintiffs' on or about July 21, 1964 and was in full force and effect on the date of the loss, January 21, 1965.

"(2) The home in question was owned by the 'Plaintiffs' and was located at 2035 South 38th Street, Kansas City, Kansas.

"(3) At or about 11:20 a.m. on January 21, 1965, when the 'Plaintiffs' were engaged in their employment away from said premises, the supporting soil under and around the foundation of said home gave way and sunk into a pre-existing cavern or shaft area of a mining operation underlying 'Plaintiffs' property; as a result of which said home was totally destroyed as a residence by reason of portions thereof sinking into said cavern or shaft thereby causing the whole of said dwelling to be tilted to various angles, and portions thereof to collapse."

The policy provisions pertinent to the loss of the home are as follows:

"PERILS INSURED AGAINST

"This policy insures under Section I against direct loss to the property covered (and additional living expense resulting from such loss) by the following perils as defined and limited herein:

· · · · · · · · · · · · · · · ·

"14. COLLAPSE (NOT SETTLING, CRACKING, SHRINKAGE, BULGING OR EXPANSION) OF BUILDING(S) OR ANY PART THEREOF, but excluding loss to (a) outdoor equipment, gutters and downspouts, cloth awnings and fences, all except as the direct result of the collapse of a building; (b) fences, pavements, patios, swimming pools, foundations, retaining walls, bulkheads, piers, wharves or docks, when such loss is caused by freezing, thawing, or by the pressure or weight of ice or water whether driven by wind or not; all except as the direct result of the collapse of a building."

· · · · · · · · · · · · · ·

"SPECIAL EXCLUSIONS

"THIS COMPANY SHALL NOT BE LIABLE:

"(a) as respects Perils . . . 14 . . . : *for loss caused by*, resulting from, contributed to or aggravated by any *earth movement, including but not limited to* earthquake, landslide, mud flow, *earth sinking*, rising or shifting; unless loss by fire or explosion ensues, and this Company shall then be liable only for such ensuing loss; . . ." (Emphasis added.)

At the outset we note certain issues raised by a third party petition and the answer of the third party defendant are of no concern in this appeal. Likewise any facts alleged in the third party petition and answer cannot be considered when not included in the stipulation of facts. Accordingly we are not at liberty to accept appellants' statement that the American Rock Crusher Company had created the subterranean cavity and negligently failed to leave sufficient subjacent support or that it failed to maintain the supporting structures in the mine. We cannot say that the collapse was proximately caused by the wrongdoing of the American Rock Crusher Company. The most we can say under the facts stipulated by these parties is

that the supporting soil under and around the foundation of the house gave way and sank into a pre-existing shaft area of a mining operation underlying the property. (See stipulation, paragraph [3].)

In contracts of adhesion, where the insurance company selects the language and the insured is "stuck with it", this court has adhered to the rule that any uncertain language in an insurance policy should be construed strictly against the company and liberally in favor of the insured. (*Fire Association v. Taylor*, 76 Kan. 392, 91 Pac. 1070; *Leiker v. State Farm Mutual Automobile Ins. Co.*, 193 Kan. 630, 396 P. 2d 264.) When an insurance contract is not ambiguous courts will not make another contract for the parties but will enforce the contract as made. (*Braly v. Commercial Casaulty Ins. Co.*, 170 Kan. 531, 227 P. 2d 571; *Bramlett v. State Farm Mutual Ins. Co.*, 205 Kan. 128, 468 P. 2d 157.) Clear and unambiguous words in a contract of insurance are to be taken and understood in their plain, ordinary and popular sense. (*Bennett v. Conrady*, 180 Kan. 485, 305 P. 2d 823, *Braly v. Commercial Casualty Ins. Co.*, supra.)

The thrust of appellants' argument is that the exclusionary clause in the policy appears to be ambiguous in that it excludes loss from "earth movement" including "earthquakes, landslides and earth sinking." They say since the exclusion appears to them to be ambiguous we should apply the formal rule of construction, *ejusdem generis*, defined recently in *Keller v. Ely*, 192 Kan. 698, 391 P. 2d 132. That rule is when specific things named in an instrument are followed by a general term, the general term is deemed to be restricted to and refer only to those things similar in nature to those specifically enumerated.

Applying that rule to the exclusionary clause in this case the appellants insist the enumerated events, earthquake, landslide and earth sinking are all events which have their origin in nature, are "acts of God" and that the loss of appellants' home was not in that category. Accordingly they argue the loss was not excluded.

Although their argument is an ingenious one we cannot accept their reasoning and must reject the argument. Before the rule of *ejusdem generis* can be applied the clause must be ambiguous. (See *Keller v. Ely, supra.*) The term "earth movement" taken in its plain, ordinary and popular sense means any movement of earth whether it be up, down or sideways. The words "earthquake, landslide, mud flow" and the term "earth sinking, rising or shifting" all

refer to vertical or horizontal movements of earth or soil, wet and dry. We fail to see how the exclusionary clause can be considered ambiguous. The words used may not reasonably be understood to have two or more possible meanings. (See *Wood v. Hatcher*, 199 Kan. 238, 428 P. 2d 799.)

In addition we cannot agree that landslides, mud flows, earth sinking, rising or shifting are natural phenomena or "acts of God." An "act of God" as known in the law is an irresistable superhuman cause, such as no reasonable human foresight, prudence, diligence and care can anticipate and prevent. (See *Lee v. Mobil Oil Corporation*, 203 Kan. 72, Syl. ¶ 1, 452 P. 2d 857.) For the most part the events enumerated in the exclusionary clause originate from the negligence or carelessness of man in failing to follow proper conservation practices. When earthquakes, which fall within the legal definition of an "act of God", are included along with landslides, mud flows and earth sinking there is no apparent basis for the restriction urged by appellants under the rule of *ejusdem generis*.

When we consider the stipulation of facts entered into by the parties it appears the supporting soil or earth under and around the foundation of the house gave way and sank. The exclusion covered loss caused by earth movement including earth sinking. We find no ambiguity in the exclusionary clause.

We have examined each case cited by appellants and have made independent research in an effort to discover a case in which a similar exclusionary clause has been examined by the courts. We know of no case considering a similar clause which has reached the courts.

We were informed on oral argument that this clause is generally found in the more recent homeowners policies. Recent cases in this area are collected in 13 Couch on Insurance, 2d Supp. under "What constitutes a collapse of building" (§ 48:173), under "What constitutes a landslide" (§ 48:174) and under "Exception as to settling, shrinking, expansion, etc." (§ 48:175).

Many of the cases cited and examined, including our own case of *Jenkins v. United States Fire Ins. Co.*, 185 Kan. 665, 347 P. 2d 417, turn on what constitutes "collapse of building(s) or any part thereof". The present case is not concerned with that question for a collapse of the house was stipulated.

The exclusionary clause in *Anderson v. Indiana Lumbermens Mutual Ins. Co.* (La. App.) 127 So. 2d 304, was quite limited in

scope. It excluded loss caused "directly or indirectly by earthquakes or other earth movements, except landslides." It was held in that case the term "earth movements" was limited in application to loss caused by earthquakes and did not exclude loss caused by expansion and contraction of soil which damaged the house.

The exclusionary clause in the present case is really quite specific. It excludes loss caused by any earth movement including but not limited to earth sinking. The term "earth movement" is specified and then further explained to include earth which sinks, rises or shifts.

In conclusion appellants make a strong argument that the exclusionary clause is all inclusive and, if not construed as they have urged, the peril of collapse insured against in paragraph fourteen is completely negated. They insist this to be the case because any other instance giving rise to collapse of the building appears to be covered by the other eighteen perils insured against in the policy. Generally these perils include fire, lightning, cost of removal of personal property, windstorm, hail, explosion, damage from the malfunctioning of the heating system or plumbing or water heater or electrical system, riots and civil commotion, aircraft, vehicles, smoke damage, vandalism and malicious mischief, theft, falling objects, weight of ice or snow or sleet, glass breakage and accidental freezing of pipes.

A collapse of a building may occur absent any of the above perils and absent any earth movement. Buildings may collapse from their own weight if not properly planned and constructed. In addition the ravages of time and dry rot may well result in a collapse of a wooden structure absent any external force. It is true that the collapse coverage extended is severely limited by the exclusionary clause. However, when the insurance contract is not ambiguous, and we so find, this court will not make another contract for the parties but will enforce the contract as made.

Accordingly we hold the loss of the house was excluded from coverage under the policy when the supporting soil under and around the foundation of the house gave way and sank into a pre-existing shaft area of a mining operation underlying the property, the loss being caused by the earth sinking.

The judgment is affirmed.

FATZER, J., dissenting: The district court had before it all the pleadings as well as the parties' written stipulation of facts. The

facts therein disclosed the following: At about 10:30 a.m. on January 21, 1965, the plaintiffs' residence was destroyed when it collapsed as the result of the sudden subsidence of their property into an existing underground mine formerly operated by the third party defendant, American Rock Crusher Company. Many years prior to January 21, 1965, American had mined vast quantities of limestone from beneath the plaintiffs' property and that of other landowners in the vicinity. American failed to leave sufficient subjacent support in the subterranean cavity created by the removal of limestone and had also negligently failed to maintain the mine, its roof and support structures. Preferred Fire Insurance Company's third party petition alleged that the collapse of the subterranean cavity into which the plaintiffs' home subsided was proximately caused by the theretofore unknown wrongdoing of American.

In my opinion, the fair and reasonable construction of the phrase "any earth movement" as used in the insurance policy's special exclusion clause means any such movement resulting from natural phenomenon, but does not include earth movements which result in a direct unbroken sequence from the negligence or wrongdoing of a third party.

In *Fire Association v. Taylor,* 76 Kan. 392, 91 Pac. 1070, it was said:

"The general rule seems to be that a policy of insurance, being an instrument prepared by the insurer, should in case of doubt be construed strictly against the insurer, who prepares it, and liberally in favor of the insured, even though the intent of the company may be otherwise. The object of the contract being to afford indemnity, it will be so construed, in case of doubt, as to support, rather than defeat, the indemnity provided for. If there is any doubt or uncertainty under the terms of the policy as to the intent of the parties, it is to be resolved in favor of the insured, or, if a policy is susceptible of two constructions, that construction is to be adopted which is favorable to the insured . . ." (l. c. 398.)

To construe the special exclusion clause any other way is to favor the insurance company to the detriment of the insured. Such construction is the least artificial and best conforms to the facts of this case. In *Pfiester v. Insurance Co.,* 85 Kan. 97, 116 Pac. 245, speaking through Mr. Justice Rousseau A. Burch, this court said:

"The other principal theory of the formation of the insurance contract is based upon facts. Everybody knows what the facts are. The insurance company sends out its agents for the purpose of procuring insurance. They are usually experts in the business and are frequently paid large bonuses for securing extra large volumes of insurance. Few persons solicited to take policies

understand the subject of insurance or the rules of law governing the negotiations, and they have no voice in dictating the terms of what is called the contract. They are clear upon two or three points which the agent promises to protect, and for everything else they must sign ready-made applications and accept ready-made policies carefully concocted to conserve the interests of the company. The agent in fact prepares the contract when he writes the application, because the policy, which the applicant does not see until delivered and does not sign, follows an acceptance of the application as a matter of course. In writing the application the agent does what the company sent him out to do. He negotiates for the company, asks questions for the company, writes down answers for the company, and makes the return for the company. It is not carelessness or imprudence in fact, as people in general understand those terms, for the applicant to take it for granted that the agent will accurately and truthfully set down the result of the negotiations. If he fail to do so good sense and common justice regard the company as responsible and not the insured. The subject, therefore, is *sui generis,* and the rules of a legal system devised to govern the formation of ordinary contracts between man and man cannot be mechanically applied to it.

"It is not necessary to review the decisions in which the foregoing conflicting views are maintained. This court favors the one which is least artificial and best conforms to the facts." (l. c. 101, 102.)

I would reverse the case and direct the district court to enter judgment in favor of the plaintiffs.