**PETERS TOWNSHIP SCHOOL DISTRICT, Plaintiff,**

v.

**The HARTFORD ACCIDENT AND INDEMNITY COMPANY, Defendant.**

**Civ. A. No. 85–1731.**

United States District Court, W.D. Pennsylvania.

Sept. 12, 1986.

Reed B. Day, Peacock, Keller, Yohe, Day & Ecker, Washington, Pa., for plaintiff.

Richard W. DiBella, Jones, Gregg, Creehan & Gerace, Pittsburgh, Pa., for defendant.

**OPINION**

DUMBAULD, Senior District Judge.

Before us for disposition are plaintiff's motion for partial summary judgment, and defendant's motion for summary judgment. Both motions address the issue of liability. The question for decision is whether the "earth movement" exclusion in an insurance policy does or does not exclude coverage on two school buildings allegedly damaged in 1984 and 1985 by mine subsidence. The coal mining operations under the McMurray school ceased in 1945, forty years ago, and under the Elm Grove site in 1935, over fifty years ago.

If defendant's motion is granted, the entire case will be disposed of, on the ground of no liability under the policy. If plaintiff's motion is granted with respect to the issue of liability, a contested issue remains as to the cause of damage to the Elm Grove School building (built in 1948). It is conceded by both parties that the damage to McMurray Middle and Elementary School (built in 1929 with additions in 1957 and 1962) was caused by mine subsidence. The extent of damages (if liability is ultimately established) will also remain for future adjudication or settlement.

The question for decision is a question of Pennsylvania law, and no controlling adjudication by the Supreme Court of Pennsylvania has been found by counsel or by the Court. Both parties cite the same cases from other courts, placing different inter-

pretations thereon. A compilation of copies of those cases, submitted as a supplement to plaintiff's brief, has been of substantial convenience to the Court and is gratefully acknowledged. An order to file this compilation as part of the record has been made, for the benefit of appellate courts that may have occasion to consider the case. Under these circumstances the Court approves the bifurcation of issues, and upon appropriate request by either party will sign a certificate to facilitate interlocutory appealability under 28 U.S.C. 1292(d)(2).

Without enumeration of authorities, we accept and apply the customary pertinent platitudes of insurance law, *e.g.* that insurance policies are to be construed in favor of the insured and against the company preparing the policy, the terms of which are often to be deemed contracts of adhesion; that "all risk" policies (with the exception [1] of the requirements of "fortuitousness" of risk; externality rather than "inherent vice" or ordinary wear and tear and deterioration; legality; freedom from fraud or wilful misconduct by the insured) afford coverage for all risks which are not specified in the exclusions contained in the policy. It is common ground in the case at bar that the question to be decided is whether damage resulting from mine subsidence is excluded by the "earth movement" clause in the policy.

We take judicial notice also of the fact that in Western Pennsylvania there has been much mining, and hence much likelihood that there may be mine subsidence which will extend to the surface if the underlying rock structure is not sufficient to support the upper strata of the earth. The right to support is, under Pennsylvania law, a "third estate" in the land, separate from the right to the surface and to the subjacent minerals. See *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 406, 43 S.Ct. 158, 67 L.Ed. 322 (1922) [a case argued by John W. Davis with opinion by

Justice Holmes, Justice Brandeis on this occasion dissenting].

The *sedes materiae* in the policy is VI–D–1 (page 13 of Ex. A to Complaint) reading as follows:

This policy does not insure under this form against:

   \*     \*     \*     \*     \*     \*

D. Loss caused by, resulting from, contributed to or aggravated by any of the following:

   1. earth movement, including but not limited to earthquake, landslide, mudflow, earth sinking, earth rising or shifting; …

unless fire or explosion as insured against ensues, and then this Company shall be liable for only loss caused by the ensuing fire or explosion; but these exclusions shall not apply to loss arising from theft.

VI–E–1 also excludes:

E. Loss caused by:

   1. wear and tear, deterioration, …; settling, cracking, shrinkage, bulging or expansion of pavements, foundations, walls, floors, roofs or ceilings; … unless loss by a peril not otherwise excluded ensues and then the Company shall be liable for only such ensuing loss; …

We put aside for present purposes the "settling" exclusion, as its applicability might turn on evidence relating to the exact nature of the damage suffered. We disregard also, as an issue ancillary to calculation of damages, defendant's contention that accrued "wear and tear" might diminish the amount of damages suffered. Likewise we disregard a dispute as to whether II–B (relating to "Property Not Covered") and specifying that "This policy does not cover … foundations of buildings" is applicable in the case at bar.

We turn now to the meaning of the words "earth movement, including but not

---

**1.** Regarding these implied exceptions in all-risk policies, see *Compagnie des Bauxites de Guinee v. Ins. Co. of North America.*, 724 F.2d 369,

372–73 (C.A.3, 1983); and *Avis v. Hartford Fire Insurance Co.*, 283 N.C. 142, 195 S.E.2d 545, 548–49 (1973).

limited to earthquake, landslide, mudflow, earth sinking, earth rising or shifting."

These are words of comprehensive generality, and as is often the case with such wide-ranging expressions, proper application requires reference to context and circumstances in order to construe the words with sufficiently specific precision. The literal words can not be given their most inclusive meaning, since the touchstone is to ascertain what was the reasonable intention of the parties to the contract (the terms being, of course, construed against the drafter of a document of "adhesion" and account being taken of what an ordinary reasonable person in the position of the insured would take them to mean [2]). For example, it would literally be an "earth movement" if a wheelbarrow load of soil were transported to a flower garden but an all risks insurer could hardly rely on this exclusion if there were an otherwise covered loss from negligent destruction of valuable flowers by dumping a load containing toxic substances from the wheelbarrow onto the flowerbed. So notwithstanding the amusing comment by Judge Herbert Goodrich on the small benefit to be gained from maxims such as *noscitur a sociis* and *ejusdem generis* [*Keystone Automobile Club v. Commissioner*, 181 F.2d 402, 404–405 (C.A.3, 1950)] we find both maxims beneficial in connection with the case at bar.

It appears that the earth moving exclusion originated as a consequence of the San Francisco earthquake and fire in 1906. It seems that originally the earthquake exclusion [3] was expanded to include other catastrophic occurrences, such as the landslides in California that in recent years have destroyed many expensive residences near the ocean.

In *Gullett v. St. Paul Fire and Marine Ins. Co.*, 446 F.2d 1100, 1103 (C.A.7, 1971), the exclusion covered "earthquake, volcanic eruption, landslide, or other earth movement." The court stated that "The *ejusdem generis* rule, however, limits that general term to the prior types of earth movement specified in that exclusion." The court conceded that there had literally been a movement of earth in the case under consideration, but found that the exclusion did not apply when (as a jury found) a collapsing rock wall pushed the earth and made it move, rather than moist earth pushed the rocks and caused them to fall. (There was policy coverage for "falling objects" and "collapse.")

The fact that in *Gullett* the comprehensive term (earth movement) is put last in the enumeration of excluded events, rather than first (as in the case at bar) does not affect, we believe, the applicability of the *ejusdem generis* doctrine. "Earthquake, volcanic eruption, landslide, or other earth movement" does not differ significantly in meaning from "earth movement, including ... earthquake, landslide &c."

We note also that in its historic evolution the "earth movement" exclusion relates to catastrophic and extraordinary calamities, affecting substantial areas, and disruptive of ordinary actuarial computations taken into account by insurers in formulating

---

**2.** The language of Learned Hand in *N.Y. Trust Co. v. Island Oil & Transport Corp.*, 34 F.2d 655, 656 (C.C.A.2, 1929), is pertinent: "It is quite true that contracts depend upon the meaning which the law imputes to the utterances, not upon what the parties actually intended; but, in ascertaining what meaning to impute, the circumstances in which the words are used is always relevant and usually indispensable. The standard is what a normally constituted person would have understood them to mean, when used in their actual setting." So too in *Anderson v. Indiana Lumbermens*, 127 So.2d 304, 308 (La.Ct. of Appeal, 2d Cir.1961) the court "emphasized the test that the intention of the parties as inferred from the contract is to be governed not by what the insurer intends the words of the policy to mean, but what a reasonable person in the position of the insured would have understood them to mean." See also *Holy Angels Academy v. Hartford Insurance Group*, 127 Misc.2d 1024, 487 N.Y.S.2d 1005, 1007 (Supreme Court, Erie County 1985), quoted *infra*, and *Pan American World Air v. Aetna Casualty & Surety Co.*, 505 F.2d 989, 1003 (C.A.2, 1974).

**3.** In *Baker & Hamilton v. Williamsburgh City Fire Insurance Co.*, 157 F. 280, 281, 283 (Circuit Court N.D.Cal.1907), the exclusion for "earthquake, or hurricane, or other eruption, convulsion, or disturbance" in a *fire* policy was limited to fires directly caused by the earthquake.

their premium rates. This is well explained in *Wyatt v. Northwestern Mutual Ins. Co.,* 304 F.Supp. 781, 782–83 (D.Minn.1969):

Plaintiffs take the position that the exclusionary language above quoted was designed and intended to exclude from coverage damage from natural causes and natural phenomena; i.e., earthquakes, landslides, mud flow and other similar occurences but that where the proximate and efficient cause of damage definitely is the action of a third-party, this exclusion does not apply even though the actions of such third-party may incidentally have caused some "earth movement."

Plaintiffs assert that the reason for the insertion of the exclusionary clause above quoted in all risk insurance policies is to relieve the insurer from occasional major disasters which are almost impossible to predict and thus to insure against. There are earthquakes or floods which cause a major catastrophe and wreak damage to everyone in a large area rather than one individual policy holder. When such happens, the very basis upon which insurance companies operate is said to be destroyed. When damage is so widespread no longer can insurance companies spread the risk and offset a few or the average percentage of losses by many premiums. Looking at the special exclusionary clause in the policy here in question, it seems to cover situations where one single event could adversely affect a large number of policyholders. Besides the particular clause which is before this court the insurer also excludes floods, tidal waves, a back up of water below the surface, changes in temperature and changes in the law. All of these are phenomena likely to affect great numbers of people when they occur.

This gives some force to the view that the various exclusions were not intended to cover the situation as here where "earth movement" occurred under a single dwelling, allegedly due to human action of third persons in the immediate vicinity of the damage. It seems hard to contend that the insurance policy meant to exclude all earth movements, for it is difficult to distinguish between a situation where a piece of heavy equipment breaks loose and hits a house causing serious damage and a situation where that equipment instead hits only an embankment next to a house but causes the earth to move and thereby damages the house. Certainly not all earth movements, or at least those where some human action causes such are included in the exclusion. If this interpretation creates an ambiguity in the language then it is necessary to decide what earth movements were intended to be covered. The class cited in the exclusionary clause is therefore held, if not limited to natural phenomena, at least not to exclude coverage in the case at bar.

We accept the view that "earth movement" in the policy involved in the case at bar means spontaneous, natural, catastrophic earth movement; and not movements brought about by other causes, such as the rock fall in *Guller* and the excavation for a subway system in *Holy Angels Academy v. Hartford Insurance Group,* 127 Misc.2d 1024, 487 N.Y.S.2d 1005, 1007 (Supreme Court, Erie Co.1985).

We agree with the court's statement on *ejusdem generis* in *Holy Angels:*

Upon review, this Court finds that it is not unreasonable for an ordinary individual reading the policy language:

"Earth movement, including but not limited to earthquake, landslide, mudflow, earth sinking, earth rising, or shifting"

to conclude that this exclusion was designed and intended to remove from coverage, property damage occurring from such natural causes as earthquakes, landslides, and mudflows; or to conclude that the policy language "settling, cracking" contained in a paragraph beginning "Loss caused by: wear and tear ..." was limited in meaning to the gradual sinking of a building from the yielding of the ground under its foundation or by the natural constriction and expansion of

its construction materials. In both instances the policy holder is merely limiting the exclusionary clauses to those same general kind and class of perils as enumerated in companion language.

Defendant's chief reliance is on a Kansas case,[4] *Stewart v. Preferred Fire Ins. Co.,* 206 Kan. 247, 477 P.2d 966 (1970), and *Patula v. N.W. Natl. Ins. Co.,* 329 Pa.Super. 321, 324–25, 478 A.2d 488 (1984). With regard to *Stewart* we find the weight of authority in other cases dealing with the "earth movement" exclusion more persuasive.

With regard to *Patula,* we consider it as not in point. The court there had no occasion to examine or interpret the substantive content of the exclusionary clause. It sufficed for the *Patula* court that the clause physically existed as part of the policy. The point in *Patula* was whether the insurance company could rely on the clause when the insured had not read it, and the company had not called his attention to it and explained it to him.

The trial court in *Patula* had followed in 1982 the holding in *Hionis v. Northern Mutual Ins. Co.,* 230 Pa.Super. 511, 327 A.2d 363 (1974), that the company must prove that the insured was aware of the exclusion and that it had been explained to him. That holding was overruled in *Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 305–306 469 A.2d 563 (decided December 30, 1983, and reargument denied February 22, 1984). Judge Popovich's comment that the *Patula* exclusion was "clear and unambigous" is simply an echo of Judge Hoffman's language in *Hionis,* 230 Super. at 517, 327 A.2d 363, that "Even where a policy is written in unambiguous terms, the burden of establishing the applicability of an exclusion ... involves proof that the insured was aware of the exclusion ... and that the effect thereof was explained to him." In other words Judge Popovich is saying that the *Patulo* exclusion would have fallen within the *Hionis* language, but that the

*Hionis* rule did not survive *Standard Venetian.* The *Patula* court found it "unnecessary" to examine the merits of the insurance company's arguments on the facts, 329 Super. at 324, 478 A.2d 488, and remanded for trial on the issues of liability and damages (*ibid.,* at 325, 478 A.2d 488). Hence it is equally unnecessary for us to consider the facts in *Patula* or whether the affidavit of plaintiff's counsel on that matter is admissible or accurate. *Patula* is altogether immaterial with respect to the question of construing the earth movement exclusion. Perhaps a subsequent adjudication in *Patula* after trial and appeal might be helpful, or perhaps even controlling, but at present *Patula* sheds no light on our task.

Possibly a word should be said here about two common pleas cases cited by counsel, *Shaffer v. Phoenix Ins. Co.,* 49 Luzerne Leg.Reg. 279, 21 Pa.D. & C.2d 79 (1960), and *Baumhauft v. N.Y. Underwriters Ins. Co.,* 53 Luzerne Leg.Reg. 125 (1963). *Shaffer* is not helpful, since the earth movement exclusion applied only to "loss to retaining walls not constituting part of a building", whereas the damage suffered was to the building itself. *Baumhauft* was an interlocutory preliminary order calling for further pleading. Moveover the exclusion there was not like that in the case at bar; it dealt with "collapse" and excluded loss caused by "subsidence."

Here we may notice defendant's contention that subsidence should be insured against by a particular type of insurance subsidized by the Commonwealth. Apparently such coverage is obtainable only in relatively small amounts, not worth bothering with when extensive properties such as the plaintiff school district's buildings are concerned. It would seem appropriate for insurers to specifically exclude "subsidence" as such, especially in Western Pennsylvania, if it is a special type of insurance coverage, rather than relying on "earth movement" to embrace the consequences of mining out support under coal lands.

---

**4.** A wag might comment that the Kansas case is *sui generis,* not *ejusdem generis,* when compared with the view of other courts. See *Holy Angels,* 487 N.Y.S.2d at 1007.

As stated in *Pan American World Air Inc. v. Aetna Casualty & Surety Co.*, 505 F.2d 989, 1000 (C.A.2, 1974); "Contra proferentem has special relevance as a rule of construction when an insurer fails to use apt words to exclude a known risk." In the same case it was pointed out that "the existence of alternative sources of insurance cannot affect the scope of all risk coverage." *Ibid.*, at 1002.

However, the fact that we have accepted, in the main, plaintiff's view of the law does not dispose of the case at bar. In our opinion plaintiff's facts fall short of proving its right to recover. While we construe the earth movement exclusion as embracing only "natural" causes, and not other operative causes such as excavation, we can not follow plaintiff's interpretation that all "things done long ago" by human intervention are "man made" activities which preclude the applicability of the exclusion.

In our opinion the human greed for gain by mining coal, of which plaintiff's counsel so eloquently speaks, is an activity which ceased a half century ago insofar as the properties involved here are concerned. After mining ceased, the sites were considered safe and suitable for the erection of school buildings which survived and served their educational purposes for many years. The subsidence from which plaintiff suffered damages occurred through "natural" and spontaneous processes of deterioration and decay. No subway systems or underground excavations were undertaken by "man" since the time when the site was selected to be used for educational purposes. A sufficiently stable *status quo* came into being after the mines were abandoned. Man's economic activities had spent their effect and left the site in the keeping of nature. Only "natural" forces remained operative to effect the deterioration and subsidence which caused the damage to plaintiff.

Therefore, under the terms of the exclusion, as properly interpreted *contra proferentem* and under the rule of *ejusdem generis*, the defendant prevails. We suggest, however, in the interest of minimizing future widespread litigation, that the insurers in future policies insert a specific exclusion for "subsidence" if that is a particular peril which they do not wish to insure against. A "subsidence" exclusion was in fact included in the policy involved in *Baumhaft, supra.*

### JUDGMENT

For the reasons set forth in the foregoing opinion, plaintiff's motion for partial summary judgment is denied; defendant's motion for summary judgment is granted, and judgment is entered in favor of defendant The Hartford Accident and Indemnity Company, and against plaintiff, Peters Township School District.