No. 35,352

Max H. Embree, *Appellee,* v. J. J. Koelsch, *Appellant.*

(119 P. 2d 533)

Opinion filed December 6, 1941.

*Aaron Coleman,* of Hutchinson, for the appellant.

*A. Lewis Oswald* and *John Fontron,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action by a partner to recover profits from the partnership. Judgment was for the plaintiff. Defendant appeals.

The petition alleged that plaintiff and the L. H. Pettit Grain Company about the first of January, 1937, entered into a contract for the operation of a truck and parts business, whereby the grain company was to furnish the capital and plaintiff was to operate it as assistant manager, and plaintiff was at the end of the year to receive as his compensation one-half of the net earnings of the business, deducting therefrom any sums that might have been advanced to him during the year.

The petition then alleged that under the system of bookkeeping used by the grain company in the conduct of the business the net earnings for any year were computed by taking an inventory of new and used trucks and new and used parts, furniture and equipment, and accounts receivable from which inventory was deducted accounts payable and the "debit balance on merchandise" arrived at and computed by setting up at the beginning of the fiscal year an item composed of the merchandise inventory and accounts receivable at that time, to which was added during the course of the fiscal year all cash disbursements, and from which was subtracted during the course of the year all cash receipts, leaving at the end of

the fiscal year a "debit balance on merchandise" equal to the inventory and accounts receivable of twelve months before plus cash disbursements and less cash receipts, during the year.

The petition then alleged that this system had been used by the parties during several years prior to 1937 under contracts practically identical with the one for 1937, and the contract for that year was entered into by both parties with full knowledge of that fact, and both parties contemplated the computation of the earnings in accordance with that system.

The petition then alleged that for 1937 the earnings amounted to $6,262.64, of which plaintiff was entitled to one-half or $3,131.32, that there had been advanced to plaintiff during the year $2,075.50 and plaintiff was entitled to $3,131.32 less $2,075.50 or $1,055.82, for which plaintiff had made demand. Then followed some allegations as to a change in ownership of the company, with which we are not concerned.

The answer was first a general denial. The answer then denied that the contract was based upon any agreed system of bookkeeping, but was intended to be based upon commissions on net earnings. The answer then alleged that for 1937 the company did not make any profits; that defendant did submit to plaintiff a statement showing its estimated profits for the year in the sum of $2,857.64, one-half of which, or $1,428.82, would have belonged to plaintiff under the agreement, and since plaintiff had drawn $2,075.50 he had been overpaid $546.68 and was entitled to nothing in the action.

The action was submitted to the trial court without a jury. The trial court found the issues in favor of the plaintiff and gave him judgment accordingly. Defendant has appealed from that judgment.

Defendant argues that the court erred in admitting evidence of previous separate agreements between the parties, in denying defendant the right to prove the profit and loss of the company for the contract year of 1937 and in rendering judgment for plaintiff on the evidence.

When plaintiff was on the stand the trial court permitted him over the objection of defendant to identify and admitted the contracts between the parties for 1935 and 1936. These contracts were identical with the contract for 1937 except for some minor details and the amount of the plaintiff's drawing account. He testified that a new agreement was entered into between the parties at the beginning of

each year; that the operation of the company started in 1935 from scratch; that net earnings were computed by subtracting "debit balance" from inventory at the end of the year; that "debit balance" was figured by adding all receipts and all expenditures and subtracting total receipts from total expenditures; that books were kept in the Pettit Grain Company office and computations were made by it.

He testified that the business was operated in the same way for 1936 except that the inventory for the end of 1935 was taken for the start of 1936; that the inventory was taken at the end of 1937 and sent to the office of the grain company and sometime afterward he received a statement showing an inventory for the end of the year of $22,298.81, a "debit balance" of $15,532.82, other debit items totaling $503.35; that this statement contained an item of "less 20% margin for selling expenses"; that such item had never been taken into account in any previous year; that the net profits according to this statement were $626.64.

The bookkeeper of defendant called as a witness for him testified that the system of bookkeeping for 1935 and 1936 had been as testified to by plaintiff and that under that system there was a profit of around $6,200.

Perhaps after all this verbiage it should be said that the dispute arose because the plaintiff was called on to take in used trucks and parts during the operation of the business. This is such a universal practice on the part of motor companies that it must be said that the contract between the parties was made in contemplation of it. Naturally when the parties settled up at the end of the year and made the calculation as to whether they had made a profit they took an inventory of the trucks, including the used ones, they had on hand. Every motor vehicle dealer has capital tied up in used vehicles all the time. The plaintiff testified that the value he put on the used trucks and cars in his inventory was a reasonable value. This was not disputed by defendant. For the first two years the parties settled on this basis. When the defendant made up the statement for 1937 and deducted the twenty percent margin for selling expense from the amount of this inventory was the first time the plaintiff had heard of such a thing. This twenty percent is what makes the difference between the parties. There is very little dispute between the parties as to the ultimate facts.

Defendant argues first that the trial court erred in admitting the

contracts for 1935 and 1936 and the method of computing the profits under them. The evidence was admitted on the theory that these settlements operated as a practical interpretation of the contract by the parties.

Defendant relies on the rule that the interpretation of a written contract free from ambiguity is a judicial function and does not require oral testimony to determine its meaning. This is the rule, but was this contract unambiguous? It says "Now the party of the first part shall receive fifty percent of the net earnings of the business . . . to be settled at the end of the year. . . ." What does that mean? The other two contracts had identical provisions. Evidently the parties decided for themselves what this provision meant because they settled their affairs without any trouble. Incidentally, it may be said that this manner of settlement seems to have been a fair one. No good reason appears why the money taken in and invested in used trucks should not be considered in calculating the profits of the business. At any rate both parties did follow that method. The rule is stated in 13 C. J. 549 as follows:

"The mode adopted by the parties in performing previous similar trade contracts is entitled to great weight in determining the meaning of a contract, especially where its meaning is doubtful." (See, also, 17 C. J. S., Contracts, § 325.)

In *Kirkpatrick v. Chrysler Sales Corporation,* 127 Kan. 724, 275 Pac. 155, this court said:

"When parties to a connected series of annual written contracts defining their business relationship, rights and liabilities, place a practical construction upon such contracts which is seemingly at variance with their literal terms, such practical construction will prevail over the language of the contracts, following *Berg v. Scully,* 120 Kan. 637, 243 Pac. 119; *District of Columbia v. Gallaher,* 124 U. S. 505, 31 L. Ed. 526." (Syl. ¶1.)

Defendant next argues that the doctrine of practical construction cannot apply in this case where the conditions and relationship of the parties had changed. We have examined the record and cannot discover where there was any substantial change in the relationship of the parties. The record discloses that plaintiff would have continued to operate the business during 1938 if defendant had not made the change in calculating the profits. Any change in the relationship of the parties was brought about by the acts of defendant and his predecessor.

Defendant next argues that the court erred in giving judgment

for plaintiff on the evidence in the case. The basis of this argument is that plaintiff never did prove that there was profit for 1937. Once we have concluded that the proper way to calculate the profits was as they were calculated in 1935 and 1936, the statement of plaintiff proved this.

The judgment of the trial court is affirmed.