(235 P.3d 515)
No. 102,579

WESTAR ENERGY, INC., *Appellant/Cross-appellee*, v. DAVID C. WITTIG, *Appellee/Cross-appellant*.

Opinion filed July 9, 2010.

*Charles W. German*, *Kirk T. May*, and *Jason M. Hans*, of Rouse Hendricks German May PC, of Kansas City, Missouri, for appellant/cross-appellee Westar Energy, Inc.

*Jeffrey D. Morris*, *Jeremy S. Weis*, *Nick J. Kurt*, and *Kirk A. Peterson*, of Berkowitz Oliver Williams Shaw & Eisenbrandt, LLP, of Kansas City, Missouri, for appellee/cross-appellant David C. Wittig.

Before HILL, P.J., GREEN and STANDRIDGE, JJ.

HILL, J.:

*Introduction*

This appeal involves a declaratory judgment action between a corporation and one of its former officers. Westar Energy, Inc. agreed to advance attorney fees and expenses reasonably incurred by any of its officers charged with a crime that related to that officer's employment. David C. Wittig, a former officer of Westar, was charged in federal court with crimes arising from his conduct during his time as an officer of Westar. Westar is now responsible for advancing fees and expenses reasonably incurred in Wittig's defense.

Persuaded by cases from Delaware, an historical source of corporate law in Kansas, we hold that Westar must reserve any action seeking recoupment, such as setoff, until after it is determined whether Wittig must pay any of the money advanced back to Westar. To rule otherwise would destroy the right of advancement entirely and thus rewrite the parties' contract, something a court

cannot do. Therefore, we uphold the district court's denial of declaratory relief to Westar on this point.

Finally, a district judge in Kansas is considered an expert on attorney fees and must use the factors found in Kansas Rule of Professional Conduct 1.5(a) (2009 Kan. Ct. R. Annot. 460) to measure the reasonableness of an attorney fee request. Here, after taking testimony on the subject and methodically considering all eight factors in Rule 1.5(a), the district court determined that the fees requested by Wittig for a Washington, D.C., law firm were unreasonable and lowered the hourly rate that Westar is to advance in Wittig's defense. The two questions that must be answered by a court in an advancement action are the entitlement of the officer to the advancement and the reasonableness of the fees and expenses requested. There is no dispute that Wittig is entitled to advancement. Even so, the district court here was obliged to determine the reasonableness of the fees Wittig requested. Because the findings of the district court were supported by substantial competent evidence, we find no abuse of discretion on this point and uphold the district court's ruling. Therefore, we deny Wittig's cross-appeal.

*We give a brief review of the facts.*

In December 2003, a federal grand jury indicted David C. Wittig for allegedly defrauding Westar Energy, Inc., a Kansas corporation. The United States began his prosecution for the crimes alleged in the indictment in *United States v. Wittig and Lake*, 03-40142-JAR, a case that is awaiting a new (third trial). When he was indicted, Wittig was the former Chief Executive Officer and Chairman of the Board of Directors of Westar. Wittig hired two law firms to help in his defense, Piper Rudnick, LLP from Washington, D.C. and Berkowitz, Oliver, Williams, Shaw & Eisenbrandt, from Kansas City, Missouri. For purposes of brevity, we will refer to the Washington, D.C. law firm as Piper Rudnick and the Kansas City, Missouri, law firm as Berkowitz Oliver. We must point out that this prosecution was not the only legal problem Wittig was experiencing at the time, because in an unrelated case, in November 2002, he was indicted for bank fraud. In that prosecution, Wittig retained

James L. Eisenbrandt of the Berkowitz Oliver firm as his defense counsel. Therefore, Wittig had already established a client-attorney relationship with Berkowitz Oliver before his second indictment.

As his prosecution continued, Wittig's legal bills mounted and he sought advances from Westar to cover these expenses. He based these claims on Article XVIII (2)(a) of Westar's Articles of Incorporation. In his view, that article amounted to a contract, a view not disputed by Westar.

> "Each person who was or is made a party . . . to or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative . . . by reason of the fact that he or she . . . is or was a director or officer, of the Corporation . . . shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the Kansas General Corporation Law . . . against all expense, liability and loss (including attorneys' fees . . .) reasonably incurred or suffered by such person in connection therewith . . . . The right to indemnification . . . shall be a contract right and shall include the right to be paid by the Corporation the expenses incurred in defending any such proceeding in advance of its final disposition: provided, however, that, if the Kansas General Corporation Law requires, the payment of such expenses . . . in advance of the final disposition of a proceeding, shall be made only upon delivery to the Corporation of an undertaking . . . to repay all amounts so advanced if it shall ultimately be determined that such director or officer is not entitled to be indemnified under this Section or otherwise."

Therefore, Wittig signed and delivered to Westar the following "Undertaking":

> "I, David C. Wittig, hereby agree that I will immediately repay Westar Energy, Inc. ("Westar") any payment it has advanced to me to cover my reasonable attorney's fees and other expenses in connection with cases brought against me . . . in the event it is ultimately determined . . . that I am not entitled to be indemnified by Westar. . . ."

In response to the "Undertaking," Westar paid all accrued bills to Piper Rudnick in September 2004. But that was just the beginning.

Again, in September and October 2004, Westar received a second and third round of Piper Rudnick bills. Westar did not review them but paid the bills in October and December 2004. But that did not end the matter. Soon after the next billing, Westar's counsel sent a letter in March 2005 telling Piper Rudnick that its bills were unreasonable and Westar did not want to advance further fees to

the firm. By this time, Westar had paid a little more than $1.8 million to Piper Rudnick. Nonetheless, the parties explored a possibility of compromise.

Instead of going to court, Westar and Wittig settled the matter. Westar agreed to pay all Piper Rudnick bills for legal services through January 2005. Both parties agreed to not go to court over these bills and, in return, Wittig would give up his rights to any Westar assets if he was convicted. However, Westar made it clear it was not waiving any right the company had to challenge the reasonableness of any future Piper Rudnick bills:

> "Therefore, and without conceding that any of the fees or expenses incurred are reasonable, the Company will advance unpaid legal fees and expenses to Mr. Wittig for your bills through January 31, 2005. Furthermore, the Company expressly reserves all of its rights to object to any future advancements requested by Mr. Wittig on any grounds, including the reasonableness of the bills, and Mr. Wittig agrees that any advancements toward his legal fees and expenses in the criminal case that have been made or may be made in the future by Westar shall not be considered a waiver of Westar's right to challenge the reasonableness of such legal fees and expenses in the future for purposes of advancement or indemnification."

After that, Westar paid more than $1.5 million in Piper Rudnick fees. But Wittig's legal expenses kept mounting.

*Westar sues Wittig for declaratory judgment and breach of contract.*

After advancing more than $3.6 million for legal fees, Westar sought relief in Shawnee County District Court. In this declaratory judgment action, Westar wanted the district court to decide the reasonableness of the fees and expenses that Wittig wanted them to advance. In a second count, Westar brought a breach of contract claim against Wittig, alleging the fees and expenses the company had already advanced were unreasonable and, therefore, Wittig had breached their contract.

The district court was thorough in its handling of this case. First, the court appointed Jack Focht, a respected member of the Wichita bar, to act as Special Master under K.S.A. 60-253(c). The district court reasoned that Focht, who has extensive experience in defending those accused of white-collar crimes, could use his expe-

rience to sort out the many questions arising from the extensive documentation associated with the legal bills from both firms. The court directed Focht to review all the legal fees and expenses using the factors set up by Kansas Rule of Professional Conduct (KRPC) 1.5(a). Focht diligently tackled the job and reported to the court in November 2007.

Focht advised the court that the fees Wittig sought for advancement were reasonable. Focht considered all the factors found in KRPC 1.5(a) in making his report to the court. (However, he did advise certain expenses claimed by Piper Rudnick were not reasonable. Those amounts are not relevant to this appeal.) Both parties objected to Focht's conclusions.

So, the district court accepted added documentation from both sides in support of their positions. And, in March 2008 it entertained additional evidence on the matter through the testimony of James L. Eisenbrandt, one of the senior partners in the Berkowitz Oliver firm. After considering the matter for some time, the court issued a declaratory judgment in July 2008.

*The district court grants Westar a part of what it wanted.*

In granting declaratory relief to Westar, the district court decided Westar had agreed to advance "reasonable fees," not "all fees." Then, the court, focusing on bills incurred between February 2005 and June 2005, ruled the number of hours and the hourly rates charged by Berkowitz Oliver were reasonable and Westar should advance them to Wittig. Going further, the court declared the hours billed by Piper Rudnick were reasonable, but their hourly rates were not. Therefore, the court declared Westar should advance fees to Wittig at a lower hourly rate for Piper Rudnick. (The court reduced some expenses sought by Piper Rudnick, but they are not part of this appeal.) The court moved on then to the breach of contract claim brought by Westar.

After granting relief to Westar on the issue of advancement of the Piper Rudnick bills, the district court decided a breach of contract claim for bills already paid by Westar was premature. The court reasoned that because an advancement action is forward-looking, thus insuring a defense, and the policy of corporate in-

demnification, which means the alleged wrongdoer may or may not have to repay, the remedy for any unreasonable charges already paid should come later:

"Since this is an advancement action, the Court finds that it would be premature to determine whether David Wittig will ultimately be entitled to indemnification from Westar Energy, Inc. Likewise, the Court finds that it would be premature to determine whether Westar is entitled to recoupment or an offset for the legal fees and expenses which the corporation has previously advanced on behalf of Mr. Wittig. Rather, the Court finds that these issues can only be determined after the underlying criminal case has been finally resolved."

After making this ruling, the court asked the parties to confer about the issue of fees already paid. Because the parties could not settle the matter, the court made its ruling.

On this point, the court ruled that any breach of contract remedies such as "recoupment" or "setoff" for fees and expenses already paid by Westar could not be resolved until after the criminal case against Wittig ends. So, the court dismissed Westar's breach of contract claim against Wittig.

Since the district court's ruling, we have been told at oral argument that fees and expenses are still flowing from Westar to Wittig, but at the adjusted rates. No one has any idea when the criminal case against Wittig will end.

*Here is a brief review of corporate indemnity and advancement law.*

With the passage of K.S.A. 17-6305, the Kansas Legislature created a public policy to encourage worthy individuals to accept positions of responsibility with corporations as directors and officers. By providing those officers indemnity from the costs associated with civil, criminal, and administrative actions as well as investigations, such officers and directors are free to make good-faith decisions without fear of penalty. The expenses that are refundable under this law are those incurred from a legal action taken against an officer or director because that person is or was a director, officer, employee, or agent of the corporation. See K.S.A. 17-6305(a). Concurrent with indemnity is the right of advancement.

Advancement of expenses, including attorney fees, incurred by a director or officer in defending a civil, criminal, administrative, or investigative action is sanctioned by K.S.A. 17-6305(e). The corporation may pay those expenses before the legal action involving the director or officer ends. But before any such advance is made, the officer or director must give the corporation an "undertaking" to repay any advances made on his or her behalf if it is later determined that officer or director is not entitled to indemnity. The statute does not allow the corporation to decide first the merits of the director's or officer's defense before advancing the costs. Chiefly, the advances are a separate right that must be honored by the corporation. Besides these discretionary statutory rights of indemnity and advancement, corporations may, by contract, offer mandatory rights of indemnity and advancement.

Such a mandatory right was created here by Westar in Article XVIII(2)(a) of its Articles of Incorporation. Therefore, Wittig is entitled to advancement of attorney fees and expenses reasonably incurred by him in his prosecution. Clearly, K.S.A. 17-6305(f) allows a corporation to make an agreement for both indemnity and advancement. Therefore, we must interpret this contract between Westar and Wittig. But we do not do so in a vacuum. Although there are no Kansas cases reported on the subject, we turn to the reports from Delaware courts because Delaware is the wellspring of Kansas corporate law. Our Supreme Court has a long history of looking to Delaware for guidance when applying the Kansas General Corporation Code. See *Kansas Heart Hospital v. Idbeis*, 286 Kan. 183, 197, 184 P.3d 866 (2008). A review of Delaware cases dealing with indemnity and advancement issues is informative.

First, we examine *Homestore, Inc. v. Tafeen*, 888 A.2d 204 (Del. 2005). In *Homestore*, a former corporate officer, Tafeen, sued for advancement of expenses and attorney fees arising from several civil lawsuits and an investigation by the Securities and Exchange Commission and the Department of Justice. The Delaware Supreme Court explained, "[i]ndemnification encourages corporate service by capable individuals by protecting their personal financial resources from depletion by the expenses they incur during an investigation or litigation that results by reason of that service." 888

A.2d at 211. The court went on to point out that, "[t]he right to indemnification cannot be established, however, until after the defense to legal proceedings has been 'successful on the merits or otherwise.'" 888 A.2d at 211. But the court carefully contrasted advancements.

Advancement, according to the Delaware Supreme Court in *Homestore*, "is an especially important corollary to indemnification as an inducement for attracting capable individuals into corporate service. Advancement provides corporate officials with immediate interim relief from the personal out-of-pocket financial burden of paying the significant on-going expenses inevitably involved with investigations and legal proceedings." 888 A.2d at 211. Even though advancement and indemnification are corollary, under Delaware law they involve separate and distinct legal actions. The right to advancement is not dependent on the right to indemnification. 888 A.2d at 212. In fact, "[t]he limited and narrow focus of an advancement proceeding precludes litigation of the merits of entitlement to indemnification for defending one self in the underlying proceedings." 888 A.2d at 214.

Next, in *Citadel Holding Corp. v. Roven*, 603 A.2d 818 (Del. 1992), the Delaware Supreme Court ruled, in a case involving an agreement similar to the contract found in Westar's Articles of Incorporation and involving a statute from Delaware's general corporation law identical with the Kansas advancement statute, "the corporation's obligation to pay expenses is subject to a reasonableness requirement." 603 A.2d at 823. The corporation in *Citadel* was not required to advance unreasonable expenses but was required to advance reasonable ones. 603 A.2d at 823-24. A right to advancement is not a corporate blank check. See also *Fasciana v. Electronic Data Systems Corp.*, 829 A.2d 160, 175 (Del. Ch. 2003) (an advancement is best thought of as a credit advanced to a director of a corporation). Also, the Supreme Court of Delaware ruled the burden of proving the reasonableness of the charges is on the officer seeking advancements. *Citadel*, 603 A.2d at 825.

After that, we examine the ruling of the Chancery Court of Delaware in *Sun-Times Media Group, Inc. v. Black*, 954 A.2d 380 (Del. Ch. 2008). After advancing more than $77 million to the defen-

dants over 5 years (including $60 million for criminal defense fees and expenses), Sun-Times brought an action to foreclose any further advancements and also sought to recoup some of the funds already advanced. The defendants had been convicted of some of the crimes charged, and the criminal cases were working their way through the federal appeals courts. The Chancery Court decided that indemnity can only be determined after the final disposition of the underlying case (or cases). Therefore, in the criminal context, an appeal of a conviction is a final shot at defeating the prosecution. 954 A.2d at 398 n.69. The corporation was contractually obliged to continue to advance fees and expenses until the last nonappealable order was issued in the underlying case. As a result, Sun-Times could not evade its contractual responsibility to advance attorneys fees and expenses connected with the former officers' criminal appeals. Finally, the court dismissed the two counts filed by Sun-Times seeking repayment or setoff. The court stated, "Performing such an allocation analysis on a provisional basis could turn out to be [a] waste of the parties' and the court's resources if the criminal convictions are overturned. If that happens, an allocation would be unnecessary. [Those Counts] are dismissed as not yet ripe." 954 A.2d at 409.

Finally, the Delaware Supreme Court held in *Kaung v. Cole Nat. Corp.*, 884 A.2d 500, 509 (Del. 2005), the scope of an advancement action made under the general corporation law of Delaware is limited to the issue of entitlement and not to issues about the alleged wrongdoer's conduct in the underlying litigation. Again, the court stressed that an advancement action is a summary proceeding. Then, in *Kaung*, the Supreme Court ruled the Chancery Court appropriately determined that some of the time billed was not reasonably incurred and therefore the corporation need not make advancements for the unreasonable bills. But, in the Supreme Court's view, the Chancery Court went too far when it "prematurely decided Kaung's liability for sums previously advanced" by the corporation were unreasonable requests and the former officer was liable for their repayment. Put simply, the court stated, "[We] hold that an advancement proceeding is summary in nature and not appropriate for litigating indemnification or recoupment. The de-

tailed analysis required of such claims is both premature and inconsistent with the purpose of a summary proceeding." 884 A.2d at 510.

To summarize, Delaware cases provide useful instruction on the law of indemnity of corporate officers and directors and the law of advancement of defense expenses and attorney fees. First, even though they are corollary rights, indemnity and advancement are not identical. In fact, advancement is independent of indemnity and—by contract—a corporation may grant a greater right of advancement than indemnity. Second, advancement proceedings should be summary in nature, with the court deciding whether a corporation should make reasonable advancements because the underlying legal action (or investigation) arises from the person's corporate actions. Advancement is not a corporate blank check. The burden of proving the reasonableness of the expenses rests with the party seeking advancements. Swift resolution of these questions preserves the right of advancement. Finally, a day of reckoning will come. Either the parties or a court must decide if the person receiving the advancements must repay or not. But that day will come only after the final nonappealable action is taken in the underlying legal action or investigation. Until that time, the corporation must make reasonable advancement of expenses and legal fees. Essentially, an advancement action is a determination of entitlement and reasonableness. These precepts are reasonable and persuasive and we will apply them to this appeal.

*We state our standards of review about the partial denial of declaratory relief.*

We will use two standards of review while deciding this appeal. For the question of the district court denying declaratory judgment, we will employ an abuse of discretion standard, and a de novo standard when interpreting the parties' contract. Our reasons for using both standards follow.

In this case, the district court refused to make a declaratory judgment on the reasonableness of legal fees and expenses already advanced by Westar because that determination was "premature." The denial of such relief for being premature is consistent with

fundamental principles of declaratory judgment law because declaratory relief is only available when there is an actual controversy between the parties. See *In re Estate of Keller*, 273 Kan. 981, 984-85, 46 P.3d 1135 (2002). An actual controversy exists when the parties can assert rights that have developed or will arise against each other. And, one of the four requirements for a declaratory judgment action is that the issue to be determined must be *ripe for judgment*. See *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 896-97, 179 P.3d 366 (2008).

Whether this issue was ripe for judgment is the basic question in this appeal. We must decide then whether the district court erred by holding a part of Westar's claim was not ripe for judgment. We review such questions for an abuse of discretion. See *T.S.I. Holdings, Inc. v. Jenkins*, 260 Kan. 703, 721-22, 924 P.2d 1239 (1996). A court abuses its discretion when judicial action is arbitrary, fanciful, or unreasonable. *State v. Reed*, 282 Kan. 272, 280, 144 P.3d 677 (2006). Further, an abuse of discretion standard includes a review to discover if the discretion was guided by any erroneous conclusions of law. See *State v. Skolaut*, 286 Kan. 219, Syl. ¶ 3, 182 P.3d 1231 (2008).

Also, we are mindful that interpreting a contract is a question of law subject to unlimited review. *Wichita State Univ. Intercollegiate Athletic Ass'n v. Marrs*, 29 Kan. App. 2d 282, 283, 28 P.3d 401 (2001). Therefore, the district court's interpretation of a contract is not binding on this court. We will independently construe the Articles of Incorporation and decide the legal effect of the parties' agreement. For the denial of declaratory relief, after checking the ruling of the district court for any erroneous conclusions of law, we review the matter for an abuse of discretion.

*Summary of arguments raised in Westar's appeal.*

This case started in 2005 when Westar filed a two-count petition against Wittig in Shawnee County District Court, seeking declaratory relief and damages for a breach of contract. As we have previously stated, the district court granted Westar declaratory relief and ruled that Westar should advance all unpaid Piper Rudnick bills at a lower hourly rate. On the other hand, the court denied

Westar any declaratory relief for fees and costs already paid and dismissed the corporation's breach of contract claim. Westar now contends that ruling denying declaratory relief for the advances already paid is wrong. Also, Westar contends the court should not have dismissed its breach of contract claim. First, we will examine the question Westar raises about the denial of declaratory relief and will point out the district court had good reasons for denying Westar relief on this point. Then, we move on to the breach of contract claim and hold the court correctly ruled that claim was premature. After that, we will focus on and deny Wittig's cross-appeal.

But we must first deal with Wittig's claim that Westar has not properly raised this issue about advances already paid. Wittig argues that since Westar has already paid all legal fees and expenses he incurred before February 1, 2005, the court cannot now consider those payments as advances. This argument arises from a show-cause order we issued. We ordered the parties to explain why we should not dismiss this appeal for want of jurisdiction, after we noted the district court had held Westar's claim about expenses already paid was not justiciable until the end of the federal court proceedings. On review of the parties' responses to our order, we kept Westar's appeal but limited the appeal to "advancement issues." Wittig now argues Westar presents no advancement issue in this appeal because the legal fees and expenses at issue have already been advanced. He cites as support the following cases: *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1229-30 (10th Cir. 2009); *Sun-Times*, 954 A.2d 380 and *Kaung*, 884 A.2d 500.

His argument fails to persuade us. First, the issue raised by Westar *results* from the fact the corporation paid advances. Second, in all the cases cited by Wittig, the various courts ruled on the propriety of advances and addressed recoupment and setoff claims resulting from previous advances. That is factually similar to this case. Here, the district court denied Westar declaratory relief for any payments made before February 2005. Certainly, the propriety of that denial by the district court is a valid subject of this appeal no matter what the parties call the payments. Regardless of the status (*i.e.*, paid or unpaid) of the legal fees and expenses at issue,

Westar's appeal generally raises issues of advancement and therefore is properly before this court. We will continue with the arguments raised by Westar.

*The district court properly denied declaratory relief to Westar.*

We find no abuse of discretion in this case when the district court denied declaratory relief to Westar for fees and expenses already advanced by Westar to Wittig. Corporate advancement of defense costs and fees is a fit subject for a declaratory judgment. For many years, Kansas district courts have used declaratory judgments granted by authority of K.S.A. 60-1701 *et seq.*, to declare the rights, status, and legal relationships of parties seeking resolution of many different types of conflicts. In fact, the law specifically directs, "Any person having an interest under a . . . written contract or other writings constituting a contract . . . may seek determination of any question of construction or validity arising under that . . . agreement and may obtain a declaration of rights, status or other legal relations thereunder." See K.S.A. 60-1704. In our view, a declaratory judgment action is the proper vehicle for judicially dealing with the various issues arising from any corporate indemnity and advancement case such as this case. The court can decide whether Wittig is entitled to advancement and, if so, whether the defense expenses and fees are reasonably incurred.

Further, declaratory judgment actions are not mere academic pursuits. "Declaratory relief is not to be entertained for the purpose of settling abstract questions, however interesting or important to the public generally, but is limited to correct errors injuriously affecting the appellant." *In re Estate of Keller*, 273 Kan. at 984. The appellate opinions dealing with this subject speak of declaratory relief in cases of "actual controversy." *Cf. Cady v. Cady*, 224 Kan. 339, 345, 581 P.2d 358 (1978). Here, we deal with interpreting "other writings constituting a contract," namely, Article XVIII(2)(a) of Westar's Articles of Incorporation. Here, because of Westar's Articles of Incorporation, Wittig, as a former Westar officer, has a mandatory right of advancement of reasonably incurred costs and fees, and Westar claims the fees are not reasonably in-

curred; there is an actual controversy ripe for declaratory judgment.

Actually, both parties agree that Westar's Articles of Incorporation form a contract. Clearly, the Articles grant the officers and directors a mandatory right to indemnity. And Westar promises to advance defense costs, including attorney fees, to the alleged wrongdoer if the costs and fees are reasonably incurred and if the accused signs an undertaking to repay if Westar later decides he or she is not entitled to indemnity. We look now at Westar's arguments.

*Westar focuses only on a small portion of the district court's ruling.*

Westar contends the district court has misinterpreted its Articles of Incorporation. In the corporation's view, nothing in their Articles prevent it from seeking declaratory relief on payments already made. Westar bases this contention on an isolated comment the court made on posttrial motions written several months after the court initially granted some declaratory relief to Westar. The court wrote: "Thus, the court finds the limited scope of proceedings to determine the rights and obligations of the parties to a contractual advancement provision is not based on a particular statute but is based on the voluntary agreement of a corporation to provide 'immediate interim relief' to its officers or directors by advancing 'ongoing' legal fees and expenses in a prompt manner." Just before this statement, the court was examining a Delaware case dealing with Del. Code Ann. tit. 8 § 145(k) (2009) of the Delaware general corporate code, a statute dealing with the summary nature of advancement proceedings in Delaware (with no equivalent in the Kansas corporate code). A fair reading of the quoted passage in context with the prior rulings of the court leads us to infer the court was holding as it did because advancement actions, by their nature, provide immediate interim relief to the accused wrongdoer. And, the court is saying that since Westar had made this contract for advancement, the rights of the parties depended on the contract and not on some provision of the Delaware corporate code. We see nothing in the court's statement suggesting the district court somehow ruled the Articles of Incorporation barred Westar from

seeking declaratory relief about payments already made. Westar has stretched the district court's statement out of proportion to fit its argument.

No appellate court in this state has addressed the issue raised by Westar. Thus, the district court based its ruling on Delaware, Maryland, New York, and United States Tenth Circuit Court of Appeals case law. Tenth Circuit Court of Appeals decisions are persuasive authority, but our courts are not bound to follow them. *State v. Thompson*, 284 Kan. 763, 801, 166 P.3d 1015 (2007).

In our view, there are two justifications for a court to refuse to make a declaratory judgment regarding legal fees and expenses previously advanced. First, in order for such a judgment to have any meaning other than perhaps settling an abstract question, the court must then permit an offset or some form of recoupment if it determines fees and expenses were improperly advanced. But advancement is meant to alleviate an officer from personally providing the enormous resources required to litigate against corporate charges. Many of the reported cases speak of millions of dollars advanced by corporations for defense fees and expenses. Permitting an offset or recoupment *during this process* undermines that objective of relieving the accused wrongdoer from making the expenditures. Thus, it makes sense to hold that fees and expenses previously advanced must be dealt with later at the indemnification stage. Second, it is more efficient to deal with the repayment of fees and expenses at the indemnification stage—when the officer may or may not be deemed liable for *all* fees and expenses. Determining the reasonableness of the fees and expenses could turn out to be a waste of time and resources if it is ultimately determined that an officer is not entitled to indemnification and must repay all funds. See *Fasciana*, 829 A.2d at 177 (noting challenge to reasonableness of fees may not matter because officer may be obligated to repay all funds). These two reasons impel us to affirm the district court's denial of declaratory relief to Westar seeking a determination of whether amounts already paid to Wittig were not reasonably incurred.

*We look at three cases used by the district court: Lake, Kaung, and Fasciana.*

Three cases are at the heart of this controversy: *Westar Energy, Inc. v. Lake*, 552 F.3d 1215; *Kaung v. Cole National Corporation*, 884 A.2d 500; and *Fasciana v. Electronic Data Systems Corp.*, 829 A.2d at 175. The parties argue about their meaning, and they were central to the court's ruling. We therefore review them in detail.

We first examine a lawsuit involving Wittig's criminal case codefendant—Douglas Lake. Because that case dealt with similar issues, we look at both the district court and Court of Appeals rulings. The United States District Court in *Westar v. Lake*, 493 F. Supp. 2d 1126 (D. Kan. 2007), ruled Westar's refusal to advance any more legal fees and expenses was wrong. 493 F. Supp. at 1147. Basing its calculations on a lower rate of compensation consistent with attorney rates customarily charged in Kansas, Westar contended in this declaratory judgment action it had already advanced more than enough money to cover reasonable fees and expenses for Lake. Westar wanted to advance no more money. Westar also asked for setoff of past overpayments against any future advancement obligation owed to Lake. The court rejected Westar's argument that out-of-state attorneys fees were per se unreasonable. The court based its decision on its own expertise as well as its knowledge of the underlying criminal case, since both trials had been held in that court. The court concluded, "[T]here are sufficiently unusual circumstances in the Criminal Case to warrant the hourly fees sought by Lake's New York and Washington D.C. counsel." 493 F. Supp. at 1146.

Then, relying on the holding of the Delaware Supreme Court in *Kaung*, the court rejected Westar's claim for recovery via setoff against future advances because such relief exceeded the narrow scope of an advancement proceeding. The court specifically ruled that Westar's request to "set-off of future advancement funds is both inappropriate and premature." 493 F. Supp. at 1147. The court declared that Westar should pay the advances at the hourly rates set by the law firms. 493 F. Supp. at 1148.

These rulings were then reviewed by the 10th Circuit Court of Appeals in *Westar Energy, Inc. v. Lake*, 552 F.3d 1215. First, the Court of Appeals held the district court's ruling that out-of-state attorney fees were not per se unreasonable was sound, given the complexity of the criminal trials. The appellate court recognized that Kansas case law had held trial courts are experts on attorney fees and this district court was well acquainted with the difficulty of the case after presiding over two full trials. Thus, the Court of Appeals ruled there was no abuse of discretion in that ruling. 552 F.3d at 1229. Then, also relying on *Kaung*, the Court of Appeals ruled, "[i]f corporations cannot make recoupment claims until the indemnification stage, they should not be permitted to achieve the same result by setting off current payments against past ones." 552 F.3d at 1229. The Court of Appeals remanded the case to the district court with the direction that Lake had to prove the reasonableness of any future request for advances. 552 F.3d at 1230. The Court of Appeals concluded that Westar contracted for the risk that it might advance fees in excess of its indemnity obligation. 552 F.3d at 1229.

We must now turn to *Kaung*. In *Kaung*, 884 A.2d 500, the Delaware Supreme Court provided important insight into indemnity and advancement law. The Chancery Court had ruled that Kaung, a former corporate officer of Cole who was a subject of a SEC investigation and a defendant in a class action lawsuit, was not entitled to receive advancement of any part of his counsel's fees that related to any time spent with a consultant. It is important to note that Cole paid all of the requested fees the day after the advancement action was filed, but Kaung wanted to proceed with the lawsuit anyway. The Chancery Court refused to grant any more advances to the lawyers and granted Cole an offset for those charges against any future requests of Kaung for advancement. In reversing the Chancery Court, the Delaware Supreme Court held an advancement action is a summary proceeding. 884 A.2d at 509. The court did approve the Chancery Court's finding that the time billed by the lawyers for time spent with the consultant was not reasonably incurred and that the lawyers were not entitled to advancement of the firm's unpaid legal fees. But the court held the

Chancery Court's determination of Kaung's liability for sums previously advanced was premature. "We hold that an advancement proceeding is summary in nature and not appropriate for litigating indemnification or recoupment. The detailed analysis required of such claims is both premature and inconsistent with the purpose of a summary proceeding." 884 A.2d at 510.

To us, Westar argues that in *Lake*, both federal courts have misinterpreted *Kaung*. The corporation bases this argument on a footnote in the unpublished opinion of the Chancery Court in Delaware, written after *Kaung* had been remanded to that court. That footnote states: "But that reversal does nothing to disturb both courts' conclusions that Kaung was not entitled to further advancement as an offset of amounts earlier advanced with respect to [the attorney's dealings with the consultant]." 2005 WL 3462250, at *3 n.11. We are not persuaded by this argument.

First, the language used by the Delaware Supreme Court in *Kaung* is clear and unequivocal, an advancement proceeding is not suitable for the detailed analysis required to resolve claims of indemnity. That makes as much sense in Kansas as it does in Delaware. In order to protect the contract right of advancement, the fees must be paid. Obviously, any underlying investigation or criminal action is not going to wait for the resolution of a lengthy legal battle over advancements. Any unreasonable delay in deciding entitlement would deny the right altogether. Second, the footnote in question supports the Chancery Court's ruling that Kaung was not entitled to "fees on fees" just because he claimed a partial victory since the Delaware Supreme Court reversed the Chancery Court's prior recoupment order. That is a far different set of facts than those confronting the district court here. Finally, we point out that in *Kaung*, Cole paid all of the requested fees the day after Kaung filed the advancement action. The Delaware Supreme Court did not have to deal with future advances because that was left to the Chancery Court to sort out after remand.

We agree with the 10th Circuit Court of Appeals. Setoff, an equitable remedy, should not be permitted in a Kansas advancement proceeding. If Westar's view of *Kaung* is correct, we choose not to follow that ruling. Such remedies as setoff should be em-

ployed only after a determination of indemnity, when the competing rights of the parties can be properly assessed.

In this same vein, Westar goes on to argue that advancement actions are more summary in nature under Delaware law because of § 145(k) of title 8 of the Delaware general corporate code, a section that has no equivalent in Kansas. We reject this argument as well. The United States District Court correctly pointed out in *Lake*, that from its legislative history, "subsection (k) is a jurisdictional provision intended to vest the Delaware Chancery Court with jurisdiction over indemnification claims." 493 F. Supp. 2d at 1140. Prior to the enactment of subsection (k), Delaware Superior Courts decided such matters in a summary fashion through motions for summary judgment. See *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 821 (Del. 1992). Advancement actions have always been treated in a summary way by Delaware courts.

The decision that best supports the district court's ruling in this case is *Fasciana v. Electronic Data Systems, Corp.*, 829 F.2d 160 (Del. Ch. 2003). In *Fasciana*, Electronic Data Systems claimed Fasciana failed to establish the reasonableness of his attorney fees because the attorney's time records were incomplete and insufficient. The Chancery Court held only a portion of Fasciana's fees and expenses were reasonably incurred in connection with his representation of Electronic Data Systems business; therefore, apportionment of the fees was an issue before that court. Since the underlying investigation concerning Fasciana was continuing, the court established a method for dealing with future advancements. The court instructed Fasciana to submit a good-faith estimate of his expenses. The court stated, "With this procedure in place, EDS should have adequate protection so that it can reserve any ultimate fight about the precise amounts until a later indemnification proceeding." 829 A.2d at 177. Like the Chancery Court in *Fasciana*, the district court here established a method for the parties to continue the advancement of defense costs for Wittig, with any fight over precise amounts to be decided when indemnity would be determined.

Finally, Westar contends that if we affirm the district court's denial of declaratory relief, we will establish a precedent that would

in the future force corporations dealing with advancement controversies to come to court before making any advances, thus causing a delay in their payment. We doubt the significance of this problem. First, federal prosecutions are not often resolved overnight. In *Sun-Times*, 954 A.2d 380, the corporation had advanced $77 million over a 5-year period. In this case, Wittig's prosecution started in 2003, with two full trials, subsequent appeals, and a third trial is scheduled. Second, a swift determination of entitlement and reasonableness is possible in these types of cases, especially through the use of declaratory judgments. While it is true that some time did elapse between the filing of this petition and the district court's ultimate ruling, much of that time was expended with proceedings before the Special Master, but the district court did assure that advances would continue to flow from Westar to Wittig (although it was at a rate that he did not like).

The public policy of encouraging worthy individuals to accept positions of corporate responsibility created by the legislature in K.S.A.17-6305 was not thwarted in this case. District courts dealing with such controversies must resolve two competing interests, the need of the accused officer or director for advances to be made and the need of the corporation to advance only expenses reasonably incurred. The district court did so in this case. Even though we might not agree with all the court ruled, we find no abuse of discretion by the district court when it denied Westar declaratory relief for advances already paid.

*Consistency compels us to affirm the dismissal of Westar's breach of contract claim.*

The district court granted Wittig's motion to dismiss Westar's breach of contract claim in April 2004, after the court had, in July 2003, denied Westar relief for fees already advanced. To us, Westar contends that its Articles of Incorporation do not prohibit it from making this claim. Essentially, this is the same argument raised in its issue concerning the district court's denial of declaratory relief that we have previously addressed. We need not repeat our prior observations concerning this. We incorporate them by reference into this ruling. But we must point out that this claim is an obvious

attempt at recoupment. If recoupment is not permitted until a determination is made concerning indemnity, then this claim cannot be prosecuted now.

The Articles of Incorporation, that forms the contract of the parties, states expressly:

> "The right to indemnification conferred in this section shall be a contract right and shall include the right to be paid by the Corporation the expenses incurred in defending any such proceeding in advance of its final disposition . . . upon delivery to the Corporation of an undertaking, by or on behalf of such director or officer, to repay all amounts so advanced if it shall ultimately be determined that such director or officer is not entitled to be indemnified . . . ."

We recognize, along with the district court, the contract between the parties conditions repayment upon a determination of indemnity.

Additionally, all of the reasoning employed to deny relief for declaratory judgment for advances already paid applies here. To attempt to resolve this matter now would be a waste of time and effort if it is ultimately determined that Wittig may have to pay all advances back or none of it back.

*We turn to Wittig's cross-appeal.*

In his cross-appeal, Wittig argues the district court ignored Westar's own interpretation of the term "reasonable" when concluding Piper Rudnick's hourly rates were unreasonable. He claims Westar's actions defined "reasonable" to include nonlocal rates by paying Piper Rudnick's initial bills without objection. Also, Wittig claims the district court failed to consider the benefit of the parties' bargain, ignored the conduct of the parties, and should not have focused solely on KRPC 1.5(a) (2009 Kan. Ct. R. Annot. 460).

We recognize that the parties here have a contract. However, once it is determined that the district court had authority under an agreement to grant attorney fees, the district court's decision is reviewed under an abuse of discretion standard. *Tyler v. Employers Mut. Cas. Co.*, 274 Kan. 227, 242, 49 P.3d 511 (2002). The district court has wide discretion to determine the amount and recipient of attorney fees. *In re Marriage of Burton*, 29 Kan. App. 2d 449, 454, 28 P.3d 427, *rev. denied* 272 Kan. 1418 (2001). An award of

attorney fees will not be set aside on appeal when supported by substantial competent evidence. The district court abuses its discretion when no reasonable person would take the view adopted by the district court. *State v. Moses*, 280 Kan. 939, 945, 127 P.3d 330 (2006). In this case, this court has unlimited review over the district court's interpretation of the phrase "reasonably incurred," a contract term. We will then evaluate the district court's decision to reduce the amount of Piper Rudnick's attorney fees for an abuse of discretion.

*We offer a brief summary of what the district court ruled on this point.*

The district court held that the hourly rates charged by Piper Rudnick were unreasonable in light of KRPC 1.5(a). The court therefore assigned a reasonable hourly rate to each Piper Rudnick attorney and nonattorney who represented Wittig. The court explained that it considered each attorney's skill and experience while doing so. Based on these hourly rates, the district court reduced the amount of Piper Rudnick's attorney fees due and thereby lowered the amount Westar was required to advance.

KRPC 1.5(a) lists eight factors a court must consider when determining the reasonableness of a fee:

"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

"(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3) the fee customarily charged in the locality for similar legal services;

"(4) the amount involved and the results obtained;

"(5) the time limitations imposed by the client or by the circumstances;

"(6) the nature and length of the professional relationship with the client;

"(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8) whether the fee is fixed or contingent." 2009 Kan. Ct. R. Annot. 461.

The district court looked at all eight factors when making its ruling:

*First*, the court found Wittig's criminal case was clearly complex in nature and continued to require a significant amount of time and labor. The court found that although the case did not

involve a federal tax charge, it still involved difficult questions and required a substantial amount of skill.

*Second,* the court noted two jury trials were conducted and a third trial was set. The court concluded the attorneys working on the case were therefore precluded from working on other matters.

*Third,* the court defined "locality" as the greater Kansas City metropolitan area. The court concluded—based on its knowledge and the evidence presented by the parties—that local attorneys with expertise in white-collar criminal defense charge substantially lower hourly rates than those charged by attorneys with similar experience in Washington, D.C. The court noted the hourly rate of James Eisenbrandt, a "well respected member of the white collar criminal defense bar in the greater Kansas City area," was $295. The court compared this to the $450 hourly rate charged by a Piper Rudnick attorney with 22 years' less experience. The court acknowledged the cost of living and economic differences and its belief that an attorney and sophisticated client should have freedom to contract for higher fees than those customarily charged in Kansas, but stated it could not ignore this factor when it was only reviewing the agreement between Westar and Wittig.

*Fourth,* the court found the criminal case against Wittig involved significant penalties and the outcome was extremely important to Wittig. The court also recognized the importance of the outcome to the employees, shareholders, and ratepayers of Westar and the United States of America. The court stated that because Wittig's first trial ended in a mistrial and the admonishment of his attorneys for their misconduct during the first trial—and Wittig was convicted of all charges in his second trial—the results obtained were mixed.

*Fifth,* the court found Wittig's attorneys were required to meet deadlines set by the judge but did not appear to be limited in time or expense by Wittig. The court noted that it was unknown whether Wittig would have set such limits had Westar not contractually agreed to advance fees and expenses.

*Sixth,* the court noted Wittig had a lengthy relationship with Berkowitz Oliver. The court also noted that Wittig's relationship with Piper Rudnick did not begin until December 2002 but that two Piper Rudnick attorneys would represent Wittig in his third trial.

*Seventh,* the court commented on the expertise the attorneys had in white-collar criminal defense and noted all had a good professional reputation. Nevertheless, the court considered the inappropriate behavior displayed by nonlocal counsel during the proceedings.

Finally, the court noted the case was neither a fixed fee nor a contingency fee case.

Based on the findings above, the court concluded that (1) the number of hours billed by both Berkowitz Oliver and Piper Rudnick (with some exceptions) were reasonable; (2) the hourly rates charged by Berkowitz Oliver attorneys and paralegals were reasonable; and (3) the hourly rates charged by Piper Rudnick attorneys were unreasonable in light of KRPC 1.5(a).

*The district court did not need evidence of the conduct of the parties.*

Wittig's argument fails because the contract of the parties is not ambiguous. The district court correctly held the language of Article XVIII(2)(a), "reasonably incurred," was plain and unambiguous. Therefore, we see no need for the district court here to consider the conduct of the parties in order to interpret this contract. Although the parties may have different views of what was reasonable, the district court—an expert in determining reasonable attorney fees—was well within its discretion to make this determination and use KRPC 1.5(a) as the methodology to resolve this dispute. See *Johnson v. Westhoff Sand Co.,* 281 Kan. 930, 940-41, 135 P.3d 1127 (2006). Because the court found no ambiguity in the contract, it was not required to look to extrinsic evidence such as the parties' course of conduct to determine reasonableness.

The law on this point is well settled. When a contract is determined to be unambiguous, the district court may look only to the four corners of the agreement to determine the parties' intent.

*Brown v. Lang,* 234 Kan. 610, 614-15, 675 P.2d 842 (1984). Contract language is ambiguous when the words used to express the intent of the parties are insufficient and have two or more possible meanings. It is only when a contract is deemed ambiguous that facts and circumstances existing prior to and contemporaneously with its execution may clarify the intent and purpose of the contract. When construing an ambiguous contract, the court may consider the interpretation placed upon the contract by the parties themselves. *First Nat'l Bank of Olathe v. Clark,* 226 Kan. 619, 624, 602 P.2d 1299 (1979).

Wittig cites several cases to support the idea that contracting parties' acts and conduct must be considered in order to ascertain the intent of an agreement, but we note that all of them involve the interpretation of an ambiguous contract. See *Universal Motor Fuels, Inc. v. Johnston,* 260 Kan. 58, 63, 917 P.2d 877 (1996) (noting where ambiguity or uncertainty of contract is involved, intent of the parties is not ascertained by resort to literal interpretation); *Akandas, Inc. v. Klippel,* 250 Kan. 458, 464-65, 827 P.2d 37 (1992) (stating general principle that intent of the parties is primary, but that meaning should be ascertained by examining four corners of document); *Heyen v. Hartnett,* 235 Kan. 117, 123-24, 679 P.2d 1152 (1984) (court construed ambiguous deed); *First Nat'l Bank of Olathe v. Clark,* 226 Kan. at 624-25 (where contract is ambiguous, district court properly permitted introduction of parol evidence to explain ambiguities); *Embree v. Koelsch,* 154 Kan. 570, 573, 119 P.2d 533 (1941) (where contract was ambiguous in terms, mode adopted by parties was properly used as guide in construing contract); *Fire Association v. Taylor,* 76 Kan. 392, Syl. ¶ 2, 91 Pac. 1070 (1907) (stating where language is susceptible of two or more meanings—*i.e.,* ambiguous—court must ascertain the intent of parties); *Sun-Times,* 954 A.2d at 398 (stating when terms of agreement are ambiguous, " 'any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement' ").

In our view, the evidentiary basis for Wittig's argument is rendered irrelevant in light of the district court's refusal to make a declaratory judgment about the reasonableness of pre-February 1,

2005, fees and expenses and his argument on this point has no force. Wittig argues that Westar defined "reasonable" to include nonlocal rates. In his deposition, a former Westar executive—Larry Irick—testified that Wittig was not limited to hiring local counsel. Irick testified Westar did not object when it learned that Wittig hired Piper Rudnick. He also testified that when Westar received the initial Piper Rudnick bills (for April 2004, September 2004, and October 2004), it did not object to the counsel chosen by Wittig, the rates charged, or the reasonableness of the bills. Irick stated the bills were not reviewed for reasonableness. But Irick stated that at the time, "the impression was that the fees were not completely out of the ball park." Then, Irick testified that a review for reasonableness was commenced (which led to Westar's March 2005 letter) because the legal fees began to skyrocket. He explained that at some point, counsel focused on the hourly rates that were being charged and made a decision about whether they were reasonable. Any evidence that Westar paid fees without objection prior to that time is irrelevant to the issue confronting the district court, which was the reasonableness of the fees requested for future advances. Moreover, Irick never testified that Westar deemed the initial fees and expenses reasonable. Instead, he testified the bills were not reviewed for reasonableness and that no objection was made.

In this case, the district court determined that Piper Rudnick's hourly rates were unreasonable in light of KRPC 1.5(a). Our Supreme Court has urged consideration of the KRPC 1.5(a) factors to determine the reasonableness of attorney fees. See *Davis v. Miller*, 269 Kan. 732, 751, 7 P.3d 1223 (2000). The district court analyzed and discussed each factor at length. Wittig does not dispute the district court's analysis or factual basis as it relates to any of these factors. There is no basis for concluding the district court abused its discretion in this regard.

On appeal, Wittig argues that in resolving this matter as it did, the court itself looked to an extrinsic source—the KRPC—because the Articles neither define nor provide guidance on the meaning of the phrase "reasonably incurred." Therefore, the court erred by not considering the extrinsic evidence of the conduct of the parties.

The Kansas Rules of Professional Conduct are not extrinsic evidence. They are simply a reference the court may consider to aid in its analysis. Their use is the methodology recognized by the Supreme Court as proper for a district court to use in making a reasonableness determination. The conduct of the parties is, however, evidence extrinsic to the Articles.

*The district court did consider the benefit of the parties' bargain.*

Going on, the record contradicts Wittig's claim that the district court failed to consider the benefit of the bargain. Instead, the record reflects that the court simply reached a conclusion contrary to Wittig's liking. The court held that the language of the "Undertaking" and Articles made clear that the benefit of the bargain was for Westar to advance *reasonable* attorney fees and expenses—and that Westar did not contract to pay all fees or grant an unconditional right to advancement. Although the district court did not discuss whether its benefit of the bargain analysis would differ where the agreement to pay attorney fees was based only in contract, the court (1) explained that the purpose of a contractual attorney fee agreement is to give the parties the benefit of the bargain and acknowledged the courts' responsibility to enforce that bargain; and (2) acknowledged that an attorney and sophisticated client should have freedom to contract for higher fees than those customarily charged in Kansas.

Wittig argues a benefit of the bargain analysis applies when an agreement to pay fees is based in contract as opposed to a fee-shifting statute. Relying primarily on the Tenth Circuit opinion in *C.J.C., Inc. v. Western States*, 834 F.2d 1533 (10th Cir. 1987), Wittig claims the court should not independently calculate a reasonable fee or closely scrutinize fees when an agreement is based in contract. Notably, the federal district court in *Lake* used a benefit of the bargain analysis when holding Westar failed to contractually limit Lake's fees to in-state counsel rates. *Westar Energy, Inc. v. Lake*, 493 F. Supp. 2d 1126, 1144 (D. Kan. 2007).

We agree with the analysis performed by the 10th Circuit Court of Appeals in *Lake* when it accurately predicted the Kansas Supreme Court would look to the various factors listed in KRPC

1.5(a) to assess the reasonableness of attorney fees arising from an agreement to pay them. 552 F.3d at 1229. Because the Articles provide only for the advancement of attorneys fees reasonably incurred, the cases dealing with fee-shifting statutes are inapplicable. Therefore, just as the 10th Circuit ruled, there is no reason to follow the ruling in *Western States* on this point. Even so, we note the court in *Western States* makes clear that the district court should not "simply award the full amount billed" but clearly had discretion to adjust a contractual award of fees if an award is inequitable or unreasonable. 834 F.2d at 1548. The court further explained:

"In considering whether a fee is unreasonable or excessive, the trial court need not wholly disregard the familiar factors from the federal cases awarding fees in a statutory context. [Citation omitted.] The district court may choose to use these factors, not to compute a reasonable fee, but to assist in determining if the fees claimed are unreasonable or inequitable. In addition, it remains important for the district court to provide a 'concise but clear explanation' of its reasons for any adjustments to the fee award." 834 F.2d at 1550.

Further, we agree also with the 10th Circuit's ruling that the burden to prove the reasonableness of the fees and expenses requested is upon the party making the request. This ruling is consistent with the ruling in Delaware courts and should be applied here.

It is true that the district court in this case *did* compute a reasonable hourly rate and adjusted Piper Rudnick's attorney fees on this basis, and the court considered each KRPC 1.5(a) factor and clearly explained its rationale for an adjustment based on its findings. This court cannot say the district court abused its discretion in doing so. In fact, it was Wittig who initially urged the district court to consider KRPC 1.5 to determine whether his attorney fees were reasonable.

Although the federal court in *Lake* reached an entirely different conclusion than that reached here, we cannot say the district court committed reversible error under the applicable standard of review. See 493 F. Supp. 2d at 1142-46. The *Lake* court was dealing with a fundamentally different problem. Westar was arguing that it need not advance any more fees and expenses in Lake's defense because of all of the money it had already advanced. That differs

from this case where Westar was seeking to advance fees at a lower rate. The district court here was not confronted with the problem of no more advances but rather how much to advance. The *Lake* court was confronted with a party wanting to make no more advances, thereby eliminating the contract right of advancement altogether. The fundamental emphasis of advancement law is that to preserve the right, advances must be paid, because hesitation and great delay destroys the right altogether. Also, the *Lake* court did not make a detailed analysis of the evidence using KRPC 1.5(a), as the district court did here. We cannot say it is an abuse of discretion for a district court to be more thorough than a federal court.

*We reject Wittig's claim that the district court created a new standard.*

In addition, Wittig argues on appeal that the district court's decision somehow created a legal standard that makes nonlocal attorney rates unreasonable per se when a court decides *sua sponte* that local attorneys could have been used. Wittig argues the court set such a standard despite "undisputed" evidence that no local attorneys could offer the legal services Wittig required.

Turning first to the standard of review for such a question, Wittig claims this court has unlimited review over the issue because it involves the construction of a written instrument and the court had no opportunity to evaluate the credibility of witnesses or trial conduct. To the contrary, Wittig's claim can be resolved entirely on the basis of witness testimony. When reviewing an award of attorney fees, this court does not reweigh the testimony or evidence presented or reassess the credibility of witnesses. An appellate court will review an award of attorney fees with an abuse of discretion standard. See *Tyler*, 274 Kan. at 242. An award of attorney fees will not be set aside on appeal when supported by substantial competent evidence.

*We review the testimony offered on the reasonableness of the fees requested.*

The district court did not determine *sua sponte* that local attorneys could have been used. Eisenbrandt testified to this fact. Contrary to Wittig's argument, the district court did not set a new

standard but simply found nonlocal rates unreasonable *in these circumstances*. Moreover, there was not "undisputed" evidence that no local attorneys could offer the legal services Wittig required.

On direct examination, Eisenbrandt testified that he recommended that Wittig retain Washington, D.C. counsel because information indicated the case was an extremely complex tax case. Eisenbrandt told Wittig it would be necessary to associate with a firm that had expertise with complex criminal tax matters. Eisenbrandt explained that a subject of a tax investigation has the right to a hearing at the United States Department of Justice before an indictment can be returned. He felt it was important to retain a firm that had expertise and contacts in the Tax Division in order to get a meaningful review. Wittig suggested Piper Rudnick.

Then, Eisenbrandt testified that when the indictment was actually issued, no federal tax charges were included. He stated that the remaining conspiracy count did, however, involve extremely complex tax issues. Eisenbrandt stated that once no federal tax charges were brought, he did not recommend discontinuing Piper Rudnick because Wittig was comfortable with Piper Rudnick; Piper Rudnick was putting time, energy, expertise, and investigation into the case; and the issues were complex. Further, Eisenbrandt believed there was no one in the Kansas City area without a conflict that could have handled the case. Eisenbrandt testified also that it was possible for the government to intervene and issue federal tax charges after the indictment was issued. He also testified he did not think any law firm or lawyer in the Kansas City area could have provided the same expertise and connections that Piper Rudnick brought.

On cross-examination, however, Eisenbrandt admitted there were firms in the Kansas City area that had both the manpower and ability to handle complex white-collar criminal matters. Although Eisenbrandt believed these firms had conflicts, he admitted he did not contact any firm to see whether a conflict did, in fact, exist or could be waived. Eisenbrandt explained that after the indictment was issued, it was decided that Berkowitz Oliver would only serve as local counsel. Eisenbrandt testified that Jeff Morris

(a Berkowitz Oliver attorney) became more involved in the second trial and will try the third trial.

It is quite clear that Eisenbrandt's testimony suggesting there were no local attorneys who could provide the legal services required by Wittig was very much disputed by his own admissions made during his cross-examination. Eisenbrandt plainly admitted on cross-examination that there were firms in the Kansas City area that had both the manpower and ability to handle complex white-collar criminal matters and that he did not verify whether these firms actually had conflicts. Eisenbrandt testified that he did not recommend discontinuing Piper Rudnick because Wittig was comfortable with Piper Rudnick and Piper Rudnick had contributed to the case. It appears to us the district court took these apparent conflicts in testimony into account when it rendered its decision. The court created no new standard but, instead, after weighing the testimony, decided what was reasonable. The district court was never critical of the choice of Piper Rudnick, just their rates considering all of the factors.

*We examine Wittig's additional arguments.*

Wittig also claims the district court ignored the complexity of his case. In reaching the conclusion that Piper Rudnick's hourly rates were unreasonable, the district court acknowledged that Wittig's criminal case was clearly complex, required a significant amount of time and labor, involved difficult questions, and required a substantial amount of skill. The district court did not ignore the complexity of Wittig's case but simply gave less weight to this factor than Wittig would have preferred. Moreover, the district court likely considered this factor in light of Eisenbrandt's testimony that there were firms in the Kansas City area that had both the manpower and ability to handle complex white-collar criminal matters.

The additional factors the court considered to reach its conclusion are supported by the record. The court noted that Jeff Morris moved from the role of local counsel to trial counsel for Wittig's second trial—and that he would be active in the third trial. This is supported by Eisenbrandt's testimony. The court observed that Wittig voluntarily kept the Washington, D.C., law firm after he

knew the indictment did not include federal tax charges. This is supported by the record. The court found it "significant" that Berkowitz Oliver anticipated it would play a primary role in Wittig's defense after the indictment was returned. Wittig does not dispute this finding on appeal. The court recognized that Wittig did not attempt to find attorneys from Kansas or Missouri to perform the role performed by Piper Rudnick. This is generally supported by Eisenbrandt's testimony that he merely believed there was no one in Kansas City without a conflict that could have handled the case and that he did not think any law firm in Kansas City could have provided the expertise and connections of Piper Rudnick. The court noted it was Wittig who suggested Piper Rudnick. This is supported by the record.

The district court's decision to reduce Piper Rudnick's hourly rates (and therefore its overall attorney fees) was not an abuse of discretion. The court weighed the evidence it heard on the subject, considered the report of the Special Master, and took into account the arguments from both sides. This was no spur-of-the-moment ruling made offhand from the bench. The findings that support the court's decision are supported by substantial competent evidence. Reasonable minds could rule as the district court did here. If we were to rule as Wittig wants, that fees must be paid without regard to their reasonableness, then advancement is reduced to a corporate blank check. If Delaware case law teaches anything, it is that advancement requires a reasonableness determination by the court as well as an entitlement decision.

*Conclusion*

This case presents issues of first impression in Kansas. We summarize our holdings:

- Declaratory judgment actions are a proper vehicle to determine the entitlement and reasonableness of advancements.
- Indemnity and advancement are corollary rights but not identical.
- Parties can, by contract, extend advancement rights greater than rights of indemnity.

- Advancement proceedings must be summary in nature, with a court determining the entitlement of the officer or director and the reasonableness of the fees and expenses requested. Quick resolution of these questions preserves the right of advancement.
- Any attempt at recoupment of money advanced must come after a determination of indemnity.
- A corporation obligated to make advancements must continue to make reasonable advances until indemnity is decided.
- Indemnity can only be determined after the final nonappealable action is taken in the underlying legal action or investigation.

Therefore, we affirm the district court in Westar's appeal and deny Wittig's cross-appeal.

Affirmed; cross-appeal denied.